A. Ernest FITZGERALD, Plaintiff,

v.

UNITED STATES CIVIL SERVICE COMMISSION et al., Defendants.

Civ. A. No. CA 74–319.

United States District Court, District of Columbia.

Dec. 29, 1975.

John Bodner, Jr., Washington, D. C., for plaintiff.

Michael J. Ryan, Asst. U. S. Atty., for defendants.

## OPINION AND ORDER

BRYANT, District Judge.

This matter is now before the Court on plaintiff's Motion For Summary Judgment and Defendant's Motion To Dismiss Or, In The Alternative, For Summary Judgment. The action is brought as an appeal from a final administrative decision of the Board of Appeals and Review of the Civil Service Commission denying plaintiff Fitzgerald an award of costs and attorneys' fees for the protracted administrative proceedings before the Commission. This Court has jurisdiction of the action pursuant to 5 U.S.C. §§ 701 et seq. Plaintiff having exhausted his administrative remedies, the matter is now properly before this Court for decision.

This action is the latest round in what is now a marathon six-year battle between A. Ernest Fitzgerald and his Pentagon and Civil Service Commission adversaries. On January 5, 1970, immediately following his testimony before the Congress regarding the already-massive cost overruns in the development and production of the Air Force's C–5A cargo plane,[1] Fitzgerald was fired by the Air Force, purportedly by reason of the abolition of his position through a reduction-in-force and the unavailability of another appropriate position within the Department. Fitzgerald appealed his removal to the Civil Service Commission, contending that he was illegally fired from his job in retaliation for his testimony about the C–5A. The Commission granted him a hearing but refused to open it to the press and public. Only after judicially ordered to do so did the Commission open the hearings.[2] Finally, on September 18, 1973, almost four years after his initial separation, the Commission ordered Fitzgerald restored, retroactively to the date of his dismissal,

> to the position from which he was improperly separated, or to any other position of like grade, salary and tenure in the Excepted Service and with the same or similar qualifications requirements as his former position. (Decision of September 18, 1973, p. 20).

Significantly, the Commission specifically found that

> the decision to abolish Mr. Fitzgerald's position and to separate him by reduction-in-force was influenced by, and resulted from, reasons that were personal to the appellant; and . . . we find his separation by reduction-in-force to be improper, inappropriate and contrary to the spirit, intent and letter of the Commission's regulation. (Decision of September 18, 1973, p. 20).

Instead of complying with this order, however, the Air Force placed Fitzgerald in a newly-created position. Fitzgerald appealed that reassignment to the Commission, claiming that it violated the Commission's order by not restoring him to a position of equal seniority and sta-

---

1. Since Fitzgerald's original testimony the C–5A project has become one of the most spectacular disasters in the history of federal procurement. *See,* e. g., New York Times, December 15, 1975, p. 1.

2. *Fitzgerald v. Hampton,* 152 U.S.App.D.C. 1, 467 F.2d 755, (1972), aff'g. 329 F.Supp. 997 (Dist. of Col., 1971).

tus. After his appeal was denied at each level of the Commission, Fitzgerald was forced to return to this Court for relief.[3] He was again vindicated, and the case was remanded to the Commission for further proceedings.[4]

█ Fitzgerald has, at each stage of his proceedings before the Commission, requested the award of costs and attorneys' fees for those proceedings. At each stage the Commission has denied that request, claiming that it is without power to determine and order the compensation of reasonable costs and attorneys' fees to an illegally fired veteran preference eligible employee. It is the Commission's authority to make such an award to a preference eligible veteran employee under the "corrective action" provision of 5 U.S.C. § 7701 which is the sole issue in this action. There being no genuine issue of material fact, the matter is ripe for summary judgment.

Many of the government's arguments in this case either miss the point entirely or misconstrue the legal question at issue here. This case does not in any way concern the inherent or equitable power of a federal district court to award costs or attorneys' fees for litigation before it. The cases cited by the government to show that the *Court* may not award fees here are therefore wholly inapposite. Specifically, those cases such as *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) and *Pyramid Lake Paiute Tribe of Indians v. Morton*, 163 U.S.App.D.C. 90, 499 F.2d 1095 (1974), *cert. denied* 420 U.S. 962, 95 S.Ct. 1351, 43 L.Ed.2d 439 holding that the *federal courts in civil actions* have no general authority to award attorneys' fees are simply not determinative of the question of *sub judice*. The proceedings for which fees are asked are not a civil action, and the plaintiff does not ask the Court to award the fees but rather to declare that the Civil Service Commission may award fees and costs for administrative proceedings before it.

Likewise inapposite is 28 U.S.C. § 2412, which prohibits the award of fees and costs *by the Court in litigation before it.* Again, the government's argument here misconstrues the nature of the question.

█ What is in fact controlling here is the holding of the Court of Appeals for this Circuit in the case of *Turner v. Federal Communications Commission*, 169 U.S.App.D.C. 113, 514 F.2d 1354 (1975). That case holds that an administrative agency cannot grant attorneys' fees to a party in proceedings before it absent a statutory grant of such authority by the Congress. What is at issue in this case, therefore, is whether Congress has given the Commission that authority in the instant situation.

Fitzgerald, recognizing all of the foregoing, contends that the requisite statutory authority is found in 5 U.S.C. § 7701, which provides:

§ 7701. Appeals of preference eligibles

A preference eligible employee as defined by section 7511 of this title is entitled to appeal to the Civil Service Commission from an adverse decision under section 7512 of this title of an administrative authority so acting. The employee shall submit the appeal in writing within a reasonable time after receipt of notice of the adverse decision, and is entitled to appear personally *or through a representative* under regulations prescribed by the Commission. The Commission, after investigation and consideration of the evidence submitted, shall submit its findings and recommendations to the administrative authority and shall send copies of the findings and recommendations to the appellant *or his representative.* The administrative authority shall take the *corrective action* that the Commission finally recommends. (emphasis added).

---

**3.** *Fitzgerald v. Civil Service Commission*, CA 74–686.

**4.** *Fitzgerald v. Civil Service Commission, supra*, Memorandum And Order, July 15, 1974.

This section was originally enacted as § 14 of the Veterans' Preference Act, ch. 287, June 27, 1944, 58 Stat. 390, as amended by the Act of August 4, 1947, ch. 447, 61 Stat. 723. It was originally codified as section 863 of Title 5, and was recodified as section 7701 in 1966, P.L. 89–554, 80 Stat. 530. The codifications made no substantive changes in § 14 of the Veterans' Preference Act (VPA), as amended. *See,* S.Rept. 1380 on H.R. 10104, 89th Cong., 2nd Sess., at pp. 20–21.

The specific issue for decision, then, is whether Congress' broad grant of authority to the Commission to take "corrective action" to remedy and protect against adverse action by federal agencies against their veteran preference eligible employees authorized it to award attorneys' fees and costs in certain cases, or whether as the government argues the Court should narrow that broad grant of authority and hold that the Commission may not under any circumstances make such an award.

This question appears to be one of first impression; the Court has found no cases where the question here presented was at issue. Indeed, in only one case, *Wettre v. Hague,* 74 F.Supp. 396 (D.Mass., 1947), rev'd on other grounds, 168 F.2d 825 (1st Cir., 1948), is the issue of attorneys' fees even mentioned in any connection with the VPA. In that case the Court speculates that counsel fees might not be recoverable, but it is not clear that this dictum was even addressed to the VPA § 14 issue at all. The question before that Court *inter alia* was whether it should enjoin the Navy from carrying out certain personnel actions (demotions), *before* plaintiffs had pursued their administrative remedies before the Civil Service Commission. A provision of the Administrative Procedure Act in force at that time, 5 U.S.C. § 1009(d), permitted the Court to enjoin such personnel actions if they would constitute irreparable injury, and it was in this context that the Court remarked

upon the question of attorneys' fees—the harm of temporary demotions was not sufficiently irreparable to justify an injunction, despite the fact that plaintiffs "presumably" could not recoup counsel fees even if the Commission ruled in their favor. It is clear that the present issue was not posed in *Wettre,* and that the discussion there was in no way intended as a holding on the meaning of § 14. This is especially the case in that the *Wettre* dictum lacks the sharp analysis of policy that characterizes Judge Wyzanski's holdings and makes them so properly influential.

■ The Commission cites two cases, *Vitarelli v. United States,* 279 F.2d 878, 150 Ct.Cl. 59 (1960) and *Middleton v. United States,* 175 Ct.Cl. 786 (1966) for the proposition that Fitzgerald is barred from any monetary relief but back pay in this situation.[5] Those cases, however, are not concerned with the question at bar; rather, they deal with the question of whether attorneys' fees are deductible from interim earnings in the computation of the amount due after an award under the Back Pay Act, 5 U.S.C. § 5596(b)(1). Since, as will be seen shortly, the Commission may award back pay to veterans preference eligibles under § 14 rather than, or in addition to, under the Back Pay Act, these cases are not relevant to the proper construction of § 14.

A search of the legislative history of the VPA fails to show any Congressional intent to narrowly limit the otherwise broad grant of authority contained in § 14, as amended. Indeed, as the Court of Appeals specifically noted in *Fitzgerald v. Hampton,* 152 U.S.App.D.C. 1, 467 F.2d at p. 762,

Clearly Congress intended to give preference eligible employees rights which would assure them of *additional security* in their public employment not enjoyed by unprotected federal employees and to *insure* them against unreasonable, arbitrary and capricious

---

**5.** Civil Service Commission Record, p. 30.

governmental intervention. (Citing *Norton v. Macy,* 135 U.S.App.D.C. 214, 217, 417 F.2d 1161, 1164 (1969).) (emphasis added).

Nowhere in the history of the Act is there any indication that in carrying out its responsibility to safeguard the special position and rights of veterans the Commission would be barred from ordering the relief that might be appropriate at the close of its proceedings, such as costs, back pay, or attorneys' fees.

The government, however, argues that § 14 granted the Commission only the authority to order corrective personnel actions, and that all other relief, such as monetary relief for back pay (or by implication for attorneys' fees and costs), was left by Congress for separate enactments, such as the Back Pay Act.[6] It is true that most litigation over § 14 has focused on the issue of back pay, and the logic of the government's position is correct, up to a point: if the Congress did not intend to grant the Civil Service Commission the broad authority to order whatever corrective action might be appropriate in a given case, e. g. back pay or attorneys' fees or costs, intending rather to limit the relief to personnel action, then an award of back pay could not be found proper under § 14. The converse is also true, however. If § 14 can be construed to allow an award of back pay as part of the "corrective action" order, then Congress must have intended to allow a broad scope for the Commission's corrective action authority. And it is here that the government's position is critically deficient: both the cases and the legislative history of the Back Pay Act conclusively establish that Congress did not intend that the Commission's authority to order corrective action under the VPA be narrowly construed.

Over twenty-five years of precedent now exists to interpret the meaning of § 14. The very case most heavily relied upon by the government to limit the scope of § 14 in fact does exactly the opposite—in *Wettre v. Hague, supra,* decided in 1947, the Court specifically states that the Commission may, under § 14, order an award of back pay, and says:

Perhaps, though some authorities ruled otherwise, the Commission was given that power under the original 1944 Act. At any rate, the 1947 amendment certainly confers that power, if it did not exist previously. The language of the amendment broadly authorizes "corrective action." And back-pay is a usual type of corrective action where an employee has been unlawfully demoted or dismissed.

74 F.Supp. at p. 399; cf. *Elchibegoff v. United States,* 106 Ct.Cl. 541 (1946) *cert. granted* 329 U.S. 704, 67 S.Ct. 187, 91 L.Ed. 613 (1946), *cert. dismissed,* 329 U.S. 694, 67 S.Ct. 629, 91 L.Ed. 607 (1946); *accord, Fischer v. Haeberle,* 80 F.Supp. 652 (E.D.N.Y.,1948); *Wittner v. United States,* 76 F.Supp. 110, 110 Ct.Cl. 231 (1948). Within the first few years following the passage of the Act, then, it was agreed that § 14 provided for broad corrective action monetary relief independent of any other enactment.

Later cases confirmed this finding. In the case of *Lezin v. United States,* 120 Ct.Cl. 724, 98 F.Supp. 574 (1951), the Court reiterated that it had "repeatedly held that [in actions successfully invoking § 14] the Government employee is entitled to recover", 98 F.Supp. at p. 574, and went on to say:

. . . the normal consequences of a successful appeal, i. e., that the erroneous original decision is undone *and held for naught,* should follow. In all the employment situations of which I am aware, the employer bears the burden of a wrongful discharge of an employee. . . . I think that Congress did not intend, when it safeguarded carefully the rights of veterans in Government employment in the Act of 1944, to leave the veteran to

---

**6.** Memorandum Of Points And Authorities In Support of Defendant's Motion To Dismiss Or, In The Alternative, For Summary Judgment, at p. 6.

bear the brunt of a discharge determined by the very procedure set up in that act to have been without cause (emphasis added).

*Accord, Garcia v. United States,* 108 F.Supp. 608, 123 Ct.Cl. 722 (1952) ("Prior to the enactment of [the Back Pay Act] on June 10, 1948, a preference eligible was entitled to recover for procedurally improper separations under [§ 14]", 108 F.Supp. at p. 615).

Only one significant case contained language casting doubt upon the broad scope of § 14, *Gregory v. United States,* 107 F.Supp. 840, 123 Ct.Cl. 794, decided by the Court of Claims in 1952. That Court, however, explicitly overruled its Gregory dicta just two years later in *Goodwin v. United States,* 118 F.Supp. 369, 370, 127 Ct.Cl. 417, 418, saying:

We have in mind the obiter statement which we made in the case of *Gregory v. United States,* 107 F.Supp. 840, 123 Ct.Cl. 794, to the effect that Congress did not, in its provision that the recommendations of the Civil Service Commission to the employing agency as to corrective action should be mandatory, intend to include a recommendation as to back pay. We said that, since Congress had in mind, when it enacted this provision in amending the Veterans' Preference Act in 1947, the probable future enactment of the express provision for back pay for all civil service employees which was made in the Act of June 10, 1948, C. 447, 62 Stat. 354, 5 U.S.C.A. 652(b)(2), it did not intend the 1947 legislation to cover the question of back pay. The 1948 Act in fact made no provision for back pay for a demoted employee, such as the plaintiff was, its relief being limited to employees who were separated and later reinstated.

Upon reconsideration, we think that our observations on this question in the Gregory case were mistaken. When Congress authorized the Civil Service Commission to hear the demoted veteran's appeal and recommend to the employing agency correction of its treatment of him, *it could not have been unaware that the most important element of relief* for wrongful demotion, next to restoration to his former status, was back pay. We would, then, be reading out of Section 14 something which it plainly contains if we were to convert our dictum in the Gregory case into a decision. Other courts have interpreted Section 14 as we here interpret it. [citing *Wettre* and *Fischer*] (emphasis added).

*Accord, Smith v. United States,* 119 F.Supp. 200, 127 Ct.Cl. 706 (1954); *Paterson v. United States,* 319 F.2d 882, 162 Ct.Cl. 675 (1963).

The clear thrust of these cases, that § 14 authorizes the Civil Service Commission to order substantial, monetary corrective action rather than being narrowly restricted to personnel actions, is further confirmed by the legislative history of the Back Pay Act, P.L. 623, June 10, 1948, ch. 447, 62 Stat. 354 (now 5 U.S.C. § 5596). Applying the principle that subsequent legislation may be considered to aid in the interpretation of prior legislation dealing with the same subject matter, *Great Northern R. Co. v. United States,* 315 U.S. 262, 62 S.Ct. 529, 86 L.Ed. 836 (1942); *Hubbell v. Commissioner of Internal Revenue,* 150 F.2d 516 (6th Cir., 1945), but see *Saunders v. Commissioner of Internal Revenue,* 215 F.2d 768 (3rd Cir., 1954), it appears clear that the Congress did not intend that latter Act to serve as the sole predicate for awards of back pay to veterans, but rather recognized that such awards could already be made under the prior legislation. The House committee report on S. 1486, which was enacted as P.L. 623 on June 10, 1948, states:[7]

The committee has been informed that several cases are pending in Federal courts in which the plaintiffs request decisions requiring the Government to pay employees compensation for periods of unwarranted separation from the Federal service. Since this

7. House Report No. 1436 on S. 1486, 80th Cong., 2nd Sess., at p. 5.

question is in litigation and has not been finally determined by the courts, the committee does not desire the proposed legislation to be construed as affecting court decisions with respect to cases involving claims pending or arising prior to the effective date of the proposed legislation.

The Commission, however, cites the legislative history of the Back Pay Act of 1966, which replaced the earlier act, in an attempt to narrow the otherwise broad scope of the VPA's § 14 corrective action provision.[8] The legislative history of the 1966 Act, P.L. 89–380, March 30, 1966, 80 Stat. 94, however, could hardly be more damaging to defendants' case. The House committee report on H.R. 1647, the bill eventually enacted, for example, says specifically that in that bill

> no attempt is made to define or enumerate the specific types of corrective action which may be taken with respect to the correction of unjustified or unwarranted personnel actions.[9]

In the Senate, furthermore, the committee report specifically states that the Veterans' Preference Act of 1944 does provide authority for the Commission to order monetary relief in the form of back pay, authority that is independent of that granted by the 1948 Back Pay legislation.[10]

All of the indicia examined thus far show that the scope of the corrective action provision of 5 U.S.C. § 7701 is a broad one, and there are a number of further reasons why the section should not be given the restrictive reading urged by the government, in the face of a legislative history devoid of compulsion for such a reading. Indeed, that legislative history reveals two strong congressional policies: first, to make whole any person who has suffered from an unjustified or improper personnel action, and second, to extend extra solicitude and

protection to veterans in federal employment. The cases discussed above reiterate and emphasize those policy goals. The Commission itself recognizes the importance of compensating an employee for the loss occasioned by improper agency action, stating in its Federal Personnel Manual that the victim of such improper action "should be given back whatever the agency's improper action caused him to lose—i. e., he should be made whole again, as though the improper action had never taken place."[11] The Commission, however, believes that it has exhausted its authority and duty to make whole a person in Mr. Fitzgerald's situation by ordering retroactive reinstatement and back pay. This is surely not the kind of protection a veteran is due under § 7701—just as Congress could not have been unaware of the importance of back pay to an employee whose VPA rights had been violated, so too could it not have been unaware of the critical, often indispensable role to be played by counsel in vindicating those rights. Indeed, the section specifically permits such a veteran preference eligible employee to appear at Commission proceedings through a representative. And the possibility seems remote that the Members of Congress who enacted this law, a large percentage of whom were lawyers themselves, could have been unaware that the *sine qua non* of legal representation in such matters is the payment of a substantial fee for the time expended and costs incurred in pressing the appeals. Mr. Fitzgerald's attorneys, for example, claim to have expended hundreds of hours in the proceedings before the Commission. The reasonable value of their services may well exceed $10,000, exclusive of costs. To hold that Fitzgerald, or any other person in his situation, must bear such an expense as the price of vindicating such basic, fundamental rights as these would make a mockery and a sham of the mandate of Congress, and in cases like the

8.  Civil Service Commission Record, p. 60.

9.  House Report No. 32 on H.R. 1647, 89th Cong., 2nd Sess., at p. 2.

10.  Senate Report No. 1062 on H.R. 1647, 89th Cong., 2nd Sess., at p. 2.

11.  Federal Personnel Manual, ch. 772, app. A, § A–2(d).

387

present one would make those rights meaningless. This the Court is not prepared to do.

■ The apprehension that narrowing the scope of § 7701 to preclude the Commission from ordering an award of attorneys' fees and costs would, in many cases, render VPA rights illusory is neither speculative nor exaggerated. In this very case, only sheer luck in locating counsel of not only skill and perseverance, but of public spirit as well, has enabled the plaintiff to assert his rights in the face of blatantly improper action against him at the highest levels of the government. It is particularly in such cases that the need for attorneys' fees is greatest, lest government officials such as the ones involved here be free to harass or victimize disfavored employees, secure in the knowledge that the employee will either be wholly unable to stand up for his or her rights because of the staggering cost of the prospective fees involved, or, even if the employee is especially courageous and tenacious, will be left with a legal bill which to virtually all federal employees would be financially catastrophic. The Court has already found that this case

> presents an exceptional history of unseemly delay and conduct by various agencies of the government. This conduct smacks of harassment and vindictiveness towards an individual who dared expose the shortcomings of his superiors and, whether deliberately or not, it will intimidate others who might feel duty bound to take similar action.

*Fitzgerald v. Civil Service Commission, supra,* Memorandum and Order, at p. 5. Such intimidation would be cast in concrete by the knowledge that, far from being made whole in the event of some unjustified retribution for his or her conscientiousness, such an employee might well be left with a legal bill of mammoth proportions. In short, "(n)ot to award counsel fees in cases such as this would be tantamount to repealing the Act itself by frustrating its basic purpose . . . Counsel fees in cases of

this kind are not only appropriate, they are imperative to preserve the Congressional purpose . . . ." *See, Cole v. Hall,* 462 F.2d 777, 780–781 (2d Cir. 1972), aff'd. 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973).

But it is not only large, complicated cases such as this one which may call for an award of attorneys' fees and costs in order to effectuate the congressional policies. Even in the ordinary cases under § 7701, where an attorney may sometimes be needed, those policies would be emasculated by the narrow reading urged by the defendants. Since most recoveries of back pay are relatively small, attorneys would not be generally available to handle them on any contingent fee basis reasonable from the veterans' point of view. Likewise, those relatively small recoveries would make it impossible for the persons involved to undertake to pay those fees outright, for the fees would often equal or exceed the amount to be recovered. It simply cannot be that the Congress intended the rights it granted in the Act to be crippled in such a fashion.

Finally, it should be observed that the rights we are concerned with here are not secondary or of small consequence. These are utterly basic, central rights—the right to make a living, and the right not to be treated arbitrarily by a government employer. If these rights are to mean anything, they must be enforcible and everyone involved must know that they are enforcible. In many cases the enforcibility of the rights will depend on the availability of counsel. So if we are serious about these rights—and the Court can only assume that the Congress is indeed serious about them—then the authority of the Civil Service Commission to order the award of attorneys' fees and costs in appropriate cases, such as this one, must be held to be a part and parcel of the statutory scheme under 5 U.S.C. § 7701.

It is, therefore, by the Court, this 26 day of December, 1975,

Ordered, that plaintiff's Motion For Summary Judgment be, and hereby is, granted; and it is

388

Further ordered, that defendants' Motion To Dismiss Or, In The Alternative, For Summary Judgment, be, and hereby is, denied; and it is

Further ordered, that the determination of the Civil Service Commission complained of be, and hereby is, set aside as erroneous; and it is

Further ordered, that the Civil Service Commission shall, within thirty (30) days of the entry of judgment in this cause, conduct a hearing to determine the amount and costs of attorneys' fees incurred by plaintiff in the conduct of the proceedings before it, which shall be awarded to plaintiff in accordance with this opinion.

So ordered.