**Arthur C. PAYNE, Plaintiff,**

v.

**PANAMA CANAL COMPANY, Defendant.**

Civ. No. 74–0366–B.

District Court, Canal Zone, Division Balboa.

March 17, 1977.

Henry L. Newell and Daniel D. Douglass, Balboa, Canal Zone, for plaintiff.

Dwight A. McKabney and William H. Beatty, Balboa Heights, Canal Zone, for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

CROWE, District Judge.

The Plaintiff, Arthur C. Payne, is an employee of the defendant, Panama Canal Company, a federally chartered corporation which is subject to the rules, regulations and decisions of the United States Civil Service Commission. Plaintiff had been employed by the defendant for a number of years and at the time of his removal he was an Administrative Services Assistant with the Supply and Community Services Bureau of the defendant, living in the Canal Zone in housing owned and operated by the defendant.

The matter is before this court on a Petition for Declaratory Judgment filed December 18, 1974. Defendant's motion to dismiss was overruled and as there is no dispute over the material facts bearing on the issue of liability this question is determined pursuant to cross motions for partial summary judgment.

## FINDINGS OF FACT

1. The plaintiff was removed from his employment with the defendant Panama Canal Company effective May 9, 1964. The removal was proposed and effected based upon three charges: (1) conduct unbecoming an employee of the Panama Canal Company; (2) failure to follow instructions of superiors; and (3) failure to obtain clearance from the office of the Governor before releasing for publication articles pertaining to Government activities in the Canal Zone.

2. Mr. Payne first appealed his case through the agency appeals system, and a hearing was held before an agency appeals examiner. The removal action was sustained at the agency appellate level. On May 26, 1964, Mr. Payne appealed to the Civil Service Commission. A hearing was held on June 17, 1964, and the Commission sustained the agency removal action by decision dated September 3, 1964. Mr. Payne then appealed to the Commission's Board of Appeals and Review, which sustained the removal action in a decision dated February 10, 1965.

3. After pursuing his administrative remedies to an unsuccessful conclusion, plaintiff on November 3, 1965, filed two lawsuits: the first in the U.S. District Court for the District of Columbia seeking reinstatement (*Payne v. Macy*, Civil No. 2754–65), and the second in the U.S. Court of Claims seeking back pay. This latter suit was subsequently transferred to the U.S. District Court for the District of Columbia (*Payne v. United States*, Civil No. 952–67).

4. On April 11, 1968, the suit for reinstatement was dismissed for want of prosecution; on April 15, 1970, the court also dismissed the suit for back pay.

5. On February 16, 1971, plaintiff persuaded the U.S. District Court for the District of Columbia to set aside the dismissal orders. After hearing arguments on cross-motions for summary judgment, the court ordered that the third charge, failure to clear publications of articles with Government, against plaintiff be dismissed and that the case be removed to the Civil Service Commission for reconsideration of charges 1 and 2.

6. In a decision dated June 21, 1972, the Civil Service Commission dismissed charge 2 and found charge 1 to be only partially sustainable. On that basis the Commission reduced the removal penalty to a 90-day suspension and directed the defendant Panama Canal Company to restore plaintiff to his former position on one of like seniority, status, and pay. Thereafter, on July 5, 1972, the U.S. District Court for the District of Columbia, with the consent of plaintiff's counsel, dismissed without prejudice plaintiff's suits for reinstatement and back pay on the ground of mootness.

7. In accordance with the Civil Service Commission directive, the plaintiff was reinstated on June 22, 1972 at the pay level of NM–9 and promoted retroactively to May 31, 1970 to pay level NM–11. The records were also amended to show the 90-day suspension.

8. Plaintiff submitted on May 14, 1974, a claim to defendant for back pay in the amount of $181,674. Defendant concedes only that back pay in the amount of $12,248.88 is due.

9. On December 18, 1974, plaintiff initiated the present action against the Panama Canal Company in this Court's Balboa Division. The complaint is in the form of a "Petition for Declaratory Judgment" wherein the Court is asked to enter a judgment declaring plaintiff's rights under the Back Pay Act of 1966, as amended (5 U.S.C. § 5596) with respect to the recovery of certain losses which plaintiff alleges were incurred as a result of his removal from defendant's employ on May 9, 1964.

10. Defendant Canal Company answered the complaint on April 9, 1976, after unsuccessfully attempting to have the case dismissed on the grounds that the action was barred by (a) the judgment of dismissal entered by the U.S. District Court for the District of Columbia in the two prior cases brought by plaintiff against defendant and (b) the applicable statute of limitations, 5 C.Z.C. § 42(3)(A).

11. At a pretrial conference held on October 14, 1976 it was agreed that there were three issues with respect to liability, which are as follows:

(a) Whether the Back Pay Act of 1966, 5 U.S.C. § 5596, as implemented by Civil Service Commission regulations published at 5 CFR 550.801–550.804, gives plaintiff a cause of action for the following elements of his claim: (1) interest; (2) an inflation factor; (3) the value of leave not taken; (4) reimbursement for taxes paid by plaintiff on

interim earnings; (5) attorney's fees; (6) a rent differential equivalent to the difference between the cost of rental housing actually paid during the period he was absent from defendant's employ and the cost of rental housing he would have paid in the Canal Zone; (7) expenses incurred for travel to obtain employment during the period plaintiff was absent from defendant's employ and for travel and shipment of household goods upon return to the Canal Zone for reinstatement to defendant's employ; and (8) cost of certain telephone calls.

(b) Whether 5 U.S.C. § 5596 gives defendant Panama Canal Company the right to deduct from back pay otherwise due the following items:

(1) Overtime compensation received by plaintiff from other employment during the period he was deprived of employment by defendant;

(2) Profit realized by plaintiff from moving expenses paid by another employer during the period he was deprived of employment by defendant;

(3) Earnings received by plaintiff from other employment during the periods when he would or might have been on leave had he remained in the employ of the defendant; and

(c) Whether plaintiff is entitled to any of the eight elements of his claim that are set forth in paragraph 11(a) above by virtue of section 14 of the Veterans Preference Act of 1944 (5 U.S.C. § 7701), as amended.

12. It was also agreed by the parties at the pretrial conference that the liability question would be decided by the Court on the basis that the parties had made cross motions for partial summary judgment.

13. On January 13, 1977, the date set for oral argument on the motions for partial summary judgment, a motion by plaintiffs to amend the pretrial order was sustained. The third issue (relating to the Veterans Preference Act), which the parties had agreed to submit to the Court for decision, was deleted from the order, and the first issue (relating to the Back Pay Act) was expanded to read as follows:

"Whether the Back Pay Act of 1966 (5 U.S.C. § 5596), as amended, the regulations of the Civil Service Commission issued pursuant to the Act (5 CFR 550.801–550–804), applicable decisions of the Court of Claims and the Comptroller General, and other judicial, administrative and legislative corrective action afforded any and all employees within the meaning of § 14 of the Veteran's Preference Act of 1944, as amended, (5 U.S.C. § 7701), as well as provisions of the Canal Zone Code and the Panama Canal Personnel Manual, give plaintiff a cause of action for the following elements of his claim: (1) interest; (2) an inflation factor; (3) the value of leave not taken; (4) reimbursement for taxes paid by plaintiff on interim earnings; (5) attorney's fees; (6) a rent differential equivalent to the difference between the cost of rental housing actually paid during the period he was absent from defendant's employ and the cost of rental housing he would have paid in the Canal Zone; (7) expenses incurred for travel to obtain employment during the period plaintiff was absent from defendant's employ and for travel and shipment of household goods upon return shipment to the Canel Zone for reinstatement to defendant's employ; and (8) cost of certain telephone calls."

14. The Plaintiff, as is stipulated between the parties is a veteran of the United States Navy having served in World War II and is a "preference eligible employee" in accordance with 5 U.S.C. 7511 and 7701.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over the parties and the subject matter of the action.

2. The Panama Canal Company, which is included within the definition of "Executive agency" at 5 U.S.C. § 105, is subject to the provisions of the Back Pay Act of 1966, as amended, 5 U.S.C. § 5596. See 5 U.S.C. § 5596(a)(1).

3. The Back Pay Act provides in pertinent part as follows:

"(b) An employee of an agency who . . . is found by appropriate authori-

ty . . . to have undergone an unjustified or unwarranted personnel action that has resulted in the withdrawal or reduction of all or a part of the pay, allowances, or differentials of the employee—

(1) is entitled on correction of the personnel action, to receive for the period which the personnel action was in effect an amount equal to all or any part of the pay . . . that the employee would have earned during that period . . . less any amounts earned by him through other employment . . .

(2) for all purposes, is deemed to have performed service for the agency during that period except that—

(A) annual leave restored under this paragraph which is in excess of the maximum leave accumulation permitted by law shall be credited to a separate leave account for the employee and shall be available for use by the employee within the time limits prescribed by regulations of the Civil Service Commission . ."

4. Section 5596(c) of 5 U.S.C. provides that the Civil Service Commission shall prescribe regulations to implement the provisions of the Back Pay Act. Acting pursuant to that authority the Civil Service Commission has issued implementing regulations, which are found in 5 CFR §§ 550.801–550.804. Section 550.804(b) of 5 CFR prescribes specifically the items that are to be included in an employee's back pay award. These items are as follows:

(1) Premium pay which the employee would have received had it not been or the unjustified or unwarranted personnel action;

(2) Changes in pay rates by reason of wage surveys, administrative action, law, or other changes of general application;

(3) Changes in allowances or differential rates;

(4) Within-grade or step increases or other periodic increases which would otherwise have become due;

(5) Changes in pay caused by changes in assigned working shifts;

(6) Changes in the employee's leave earnings rate; and

(7) Any other changes which would affect the amount of pay, allowances, differentials or leave which the employee would have earned had it not been for the unjustified or unwarranted personnel action.

■ 5. In accordance with the terms of 5 U.S.C. 5596(b)(1) the plaintiff is entitled to receive for the period in which the personnel action was in effect an amount equal to all or any part of the pay, allowances, or differentials that he would have normally earned during that period less any amounts earned by him through other employment during the period. During the period extending from the date of removal, May 9, 1964 to his date of reinstatement, June 22, 1972 a state of great inflation existed in the United States and as the statute specifically states "an amount equal" is to be paid it cannot be said that a 1964 dollar is "equal" to a 1972 dollar. The rate of inflation is a carefully calculated known entity to the United States Government and this should be used in making payment to the plaintiff as well as in calculating the amounts earned by him to be deducted. It is ordered therefore that in making the calculation of the amount due and the amount to be deducted that an inflation factor be used in accordance with the Consumer Price Indices of the years involved as determined by the Federal Government of the United States.

■ 6. In calculating the amounts to be deducted as "any amounts earned by plaintiff" through other employment during that period only such sums as the plaintiff may have earned during a regular 40 hour work week shall be used and this shall be used in computing the amounts that the plaintiff would "normally" have earned during the period if the personnel action had not occurred. Overtime by a substitute employee or plaintiff's replacement would not be a true gauge as this frequently pertains to the individual employee.

Plaintiff contends that as he worked 50 weeks out of every year during the period after his wrongful removal until reinstatement and would have had to work only 44 weeks per year in the employ of defendant that the earnings for only 44 weeks per year should be deducted from the amount of pay due him under 5 U.S.C. § 5596(b)(1). This position is without merit as the statute specifically states that amounts earned by him through "other employment during that period" shall be deducted. The "period" therefore is the gauge and nothing is said about any vacation allowances or other benefits that should not be calculated. A 40 hour work week, as has been stated can reasonably be construed to be the "period" in contemplation by the statute as that is the general government employee work week but the allowances of other limitations on the amount to be deducted cannot be read into the specific language of the statute.

Extra employment that plaintiff may have obtained "moonlighting" at nights or on weekends in order to survive should not be deductible nor should income taxes paid to states nor municipalities be deducted as there are no such taxes in the Canal Zone. The amount "equal" should be the net after such taxes have been paid.

7. With regard to the leave which plaintiff claims he would have accumulated, section 5596(b)(2)(A) of 5 U.S.C. provides for the crediting to a separate leave account of "annual" leave which is in excess of the maximum accumulation "permitted by law". The foregoing provision was added to 5 U.S.C. § 5596 pursuant to Pub.L. 94–172, 89 Stat. 1025, approved December 23, 1975. Prior to the enactment of Pub.L. 94–127, § 5596(A)(2) of 5 U.S.C. Provided that an employee could not be credited with "leave in an amount that would cause the amount of leave to his credit to exceed the maximum amount of the leave authorized for the employee by law or regulation." Although Pub.L. 94–172 removes a major restriction upon the amount of leave that may be restored upon correction of an erroneous personnel action, the change does not benefit employees of defendant Canal Company.

8. Initially, Pub.L. 94–172 provides for the crediting to a separate account of only annual leave which is in excess of the maximum leave accumulation "permitted by law". The maximum amount of leave which may be accrued under defendant's leave system is not established by "law", but rather is set by administrative regulation. See Chapter 630 of the *Panama Canal Personnel Manual.* Inasmuch as section 5596(b)(2)(A) makes no provision for the accumulation of leave beyond a maximum that is set administratively, such a maximum must continue to be given effect. The fact that the words "or regulation" were deleted from the original language of section 5596 supports such a conclusion. Had Congress intended to permit the restoration to an employee of leave in excess of an amount established administratively, the words "or regulation" would surely have been retained after the phrase "maximum leave accumulation permitted by law".

9. Secondly, the express purpose of Pub.L. 94–172 is to permit those employees, whose "annual" leave accrual is limited by 5 U.S.C. § 6304(a), to accumulate annual leave in excess of the statutory maximum upon correction of an erroneous personnel action. See S.Rep. 94–536, 94th Cong., 1st Sess. 2 (1975). Section 6304(a) is not applicable to defendant's employees, however, by virtue of 5 U.S.C. § 6301(2)(B)(iv). Congress could not have intended to include defendant's employees within the scope of Pub.L. 94–172 since that ceiling is not applicable to them. This conclusion is supported by the fact that § 5596(b)(2)(A) provides only for the accumulation of "annual" leave as opposed to "sick" leave, which an employee subject to § 6304(a) may accumulate without limit. See 5 U.S.C. § 6307(b). Defendant's leave system, on the other hand, makes no distinction between "annual" and "sick" leave, but rather combines the two into a single category. Inasmuch as Pub.L. 94–172 permits the accumulation of only "annual leave", it would be contrary to Congressional intent to include within the

scope of that statute an already liberal "combined" leave system such as defendant's.

■ 10. Plaintiff is entitled to have his household effects shipped to the Canal Zone at defendant's expense. He and his wife were transported to the Canal Zone by defendant, upon reinstatement but defendant refused to transfer his household effects, citing the Panama Canal Personnel Manual (PCPM Sec. 572 8–8a) wherein no provision is made for expenses of shipment of household goods in cases of reinstatement following an adverse action. This court does not accept such a ruling on the part of the defendant who erred in the personnel action. It cannot be allowed to stand on its own personnel manual's deficiency in language and choose not to embrace plaintiff in construing its manual that provides for the shipment of household goods only in cases of "recruitment, repatriation or permanent change of station". Plaintiff was required to remove from the Canal Zone when his employment was terminated by reason of defendant's wrongful decision in the adverse action as the defendant is the owner of the land and housing in the Canal Zone and requires people who lose their employment to leave. When he was reinstated he was therefore entitled to the cost of shipment as surely as though he had been recruited anew.

Plaintiff is not entitled to the storage from the date of reinstatement, as claimed. He should have brought the household goods to the Canal Zone at his own expense and then claimed for the shipment costs. He too is under an obligation to prevent the government from unwarranted expenditures of funds and will therefore not be entitled to the cost of storage over the years of this dispute.

■ 11. The defendant is not entitled to deduct from the amount due plaintiff under the statute, the sums allowed him by interim employers for travel expenses from point to point during the course of such employment. Even though such expenses might be in excess of those generally allowed for federal employees in similar circumstances, none nor any part of them should be considered as "earned" income under 5 U.S.C. § 5596(b)(1) but only as expenses incident to his employment which are presumed to be exhausted in the travels and transfers for which they were allowed.

■ 12. It is well established that Congress waives sovereign immunity when it authorizes a governmental agency to sue and be sued in its own name. *R. F. C. v. J. G. Menihan Corp.,* 312 U.S. 81, 61 S.Ct. 485, 85 L.Ed. 595 (1941); *F. H. A. v. Burr,* 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724 (1940). The defendant argues that no interest should be imposed because no judgment had been entered and that plaintiff, at best, would not be entitled to interest except after the entry of a judgment.

■ In *White v. Bloomberg,* 501 F.2d 1379 (4 Cir. 1974) it was held that as past judgment interest is a normal incident in suits for damages that a "sue and be sued" clause ordinarily should be construed to waive the agency's immunity from interest awards. While this is not an action in tort nor a suit for damages and interest would not be allowable for the period between removal and reinstatement it is only just that interest should be paid on any sums not paid but due plaintiff, after reinstatement was effected by the Civil Service Commission, in excess of any sums tendered to him by the defendant. This interest should be paid from the date of reinstatement until paid and shall be at the rate of 6% per annum as would a judgment. See 5 CZC 511. This statute does not specify that only judgments of a certain type in certain actions should bear interest but merely states "judgments". The reinstatement of plaintiff was a decision of the Commission and he immediately became entitled to payment under 5 U.S.C. 5596(b)(1) so interest should be paid as stated. As a general rule where money is due in the Canal Zone the payment of interest is contemplated. See 4 CZC 4651 and 4683.

13. Section 7701 of 5 U.S.C., formerly section 14 of the Veterans Preference Act of 1944, as amended, is as follows:

"A preference eligible employee as defined by section 7511 of this title is entitled to appeal to the Civil Service Commission from an adverse decision under section 7512 of this title of an administrative authority so acting. The employee shall submit the appeal in writing within a reasonable time after receipt of notice of the adverse decision, and is entitled to appear personally or through a representative under regulations prescribed by the Commission. The Commission, after investigation and consideration of the evidence submitted, shall submit its findings and recommendations to the administrative authority and shall send copies of the findings and recommendations to the appellant or his representative. The administrative authority shall take the corrective action that the Commission finally recommends. (Pub.L. 89–554, Sept. 6, 1966, 80 Stat. 530.)"

This statute does not give the erroneously discharged veteran the right to sue the employing agency for consequential damages arising from a wrongful removal but it does give the Civil Service Commission the power to recommend "corrective action" that the administrative authority, in this case the defendant, shall take.

In *Fitzgerald v. United States Civil Service Commission,* 407 F.Supp. 380, (D.C. 1975) in a well reasoned opinion the court ordered the Commission to within 30 days of entry of judgment in the cause to "conduct a hearing to determine the amount and costs of attorneys' fees incurred by plaintiff in the conduct of the proceedings before it, which shall be awarded to plaintiff in accordance with this opinion."

The decision in that case was just and fair and shall be applied as nearly as possible in this case. The agency, the defendant, is before court and not the Civil Service Commission so this court cannot order the Commission to act. It can suggest, however, to the Commission that the defendant is responsible for the loss occasioned by the improper personnel action and plaintiff should be made whole again by the defendant as though the improper action had not taken place.

In this case as in *Fitzgerald,* supra, had it not been for the skill and perseverance of plaintiff and counsel the arbitrary acts of defendant would have prevailed. If plaintiff were to have to pay the costs and attorneys fees in this long and complicated litigation he would be impoverished and other people in similar positions would be discouraged and prevented from pursuing a course that would lead only to a Pyrrhic victory and financial ruin.

The reasoning applied in *Fitzgerald,* supra, is certainly applicable to the claims for rent differential equivalent to the difference in the cost of rentals paid in the United States during the eight year period and those he would have paid in the Canal Zone, expenses of travel and telephone calls incidental to the wrongful removal and other "corrective action" that the Commission might make that is not dictated by specific statutes.

The scope of the corrective action provision of 5 U.S.C. 7701 is a broad one with two strong congressional policies: (1) to make whole any person who has suffered from an unjust or improper personnel action and (2) to extend extra solicitude and protection to veterans in federal employment.

14. This court makes no decision as to the attorney fees and costs, rent differential, travel expenses and telephone calls but refers the parties to the Civil Service Commission for a determination of these claims.

15. The question of liability having been decided on the claims other than those in conclusion No. 14 are to be further determined as to amounts in accordance with the guide lines laid down in these findings and the case will be retained on the docket for determination of these amounts together with costs and further orders.