**Irma J. SMITH et al.,**

v.

**CONCORDIA PARISH SCHOOL BOARD et al.**

**Civ. A. No. 11577.**

United States District Court,
W. D. Louisiana,
Monroe Division.

Jan. 14, 1975.

Stanley A. Halpin, Jr., New Orleans, La., for plaintiff Sammy Davis, Jr.

John F. Ward, Jr., Baton Rouge, La., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

DAWKINS, Senior District Judge.

This matter came before us November 20, 1974, on remand from the United States Court of Appeals for the Fifth Circuit, which by order of April 24, 1974, 493 F.2d 8, affirmed our reinstatement of black principal Sammy Davis, Jr., with full back pay from the date of his dismissal. The Court of Appeals remanded the case for "further consideration" of "possible mitigation of the back pay award." Plaintiff also has moved for attorney's fees and these matters have been consolidated.

Defendants, in a pleading styled Motion to Dismiss, have urged that the Eleventh Amendment to the United Sates Constitution is a bar to an award of back pay and attorney's fees. At the hearing the parties were allowed to introduce evidence on these issues.

Prior to the beginning of the 1970–71 school term, the Board dismissed and demoted some twenty black educators, and employed twenty-five white educators to replace them, hiring no blacks, all without development and application of objective criteria as required by earlier orders of this Court and the Fifth Circuit. Among the twenty black educators was Sammy Davis Jr. Acting upon a motion for further relief by plaintiffs, we held that the dismissals and demotions, including that of Davis, had been effected without establishment of objective criteria as required by our January 30, 1970, order. We, therefore, ordered their reinstatement. Smith v. Concordia Parish School Board, (U.S.D.C., W.D. La., C.A.No. 11,577, Order of September 3, 1970).

On appeal, the Court of Appeals affirmed our reinstatement of the black educators, as well as our use of ratios as a method of preventing racial discrimi-

nation against black teachers pending development of objective criteria. Smith v. Concordia Parish School Board, 445 F.2d 285 (5th Cir., 1971). The Court further directed: "The District Court will require the Board, the plaintiffs, and the Department of Justice to submit, within fifteen days, non-discriminatory, non-racial objective criteria *to cover both faculty reduction and dismissal for cause.* If the parties cannot agree on such criteria, the District Court will, within thirty days thereafter, require the Board to adopt the criteria that the District Court prescribes so as to *effectively* comply with the provisions of *Singleton.*" (Emphasis added.) Without having submitted to this Court the type of "objective criteria" required by the June 15, 1971, order of the Fifth Circuit, or purporting to apply any objective criteria, the Board proceeded with its dismissal of Davis and filed its proposed criteria on the same day he was dismissed, September 2, 1971.

The Board had filed what purported to be objective criteria in March, 1971, prior to the June 15, 1971, Fifth Circuit order. These criteria, coming prior to the order of the Fifth Circuit, were not responsive, did not cover the types of dismissals and demotions contemplated by that Court order, and were indistinguishable from those criteria which, in our order of September 3, 1970, we found impermissible, in that the standards fixed were too vague to be considered objective.

Defendants' March, 1971, criteria never pretended to be in compliance with the June 15, 1971, order of the Fifth Circuit, which set forth the types of dismissals for which objective criteria were to be developed, and the Board through its attorney admitted that before this Court. District Attorney W. C. Falkenheiner stated at the hearing before this Court that ". . . at the time this hearing [Davis' hearing before the School Board] was held, objective criteria had nothing to do with that . . . . And *at the time of the hearing, we had no objective criteria.*" (Empha-

sis supplied.) This is reported in the transcript of proceedings before us and appears at p. 47 of the Appendix filed with the Court of Appeals. At a hearing before Judge Scott, of this Court, on defendants' application for a stay, Mr. Falkenheiner reiterated that at the time dismissal proceedings were brought against Davis, that ". . . we were under orders of the Fifth Circuit to produce objective criteria and, of course, no inference by the board here that it has any objective criteria. *That is admitted, it had none.*" (5th Cir. Appendix p. 60.)

On the same day that Davis' dismissal formally was effected by the Board, September 2, 1971, it filed with us its proposed objective criteria in response to the June 15, 1971, order of the Court of Appeals. If the Board indeed believed it already had established objective criteria, it at least could have attempted to apply these to Davis, or if it believed that it had objective criteria responsive to the Court of Appeals' order, it certainly would have been unnecessary for the Board to file a new and different set of objective criteria on September 2, 1971.

Accordingly, we found that Davis was dismissed without benefit of "objective criteria" as required by earlier orders of the Court of Appeals; and that Court, by its order of April 24, 1974, explicitly found that "This tactic cannot be allowed. Even though the board complied with the Louisiana Teacher Tenure Act, it did not comply with the order of this Court."

We now find that Davis is in no way guilty of laches, nor has he in any way "sat upon his rights." To the contrary, he has been extremely diligent in asserting them. Even before his dismissal by the Board, he sought a temporary restraining order to enjoin his dismissal. We then denied the restraining order, believing at the time that the proper course of action was for Davis to pursue his administrative remedy under State law. We did not set for hearing motions for preliminary injunction, or supple-

mental relief, filed with the application for the TRO, because of our crowded docket, and also because two of our similar rulings, relegating dismissed teachers to their remedies under the State Teacher Tenure Law, then were on appeal to the Court of Appeals. In those two cases, Chisley v. Richland Parish School Board, 5 Cir. 448 F.2d 1251, and Cornist v. Richland Parish School Board, 5 Cir., 448 F.2d 594, that Court held that relegation to such administrative remedies was improper. Prior to the 1972–73 school term, plaintiffs filed additional motions for a TRO, supplemental relief, a preliminary injunction, and for summary judgment. A hearing was conducted September 1, 1972, resulting in our decision reinstating Davis, affirmed by the Court of Appeals by its order of April 24, 1974, 493 F.2d 8.

Accordingly, we find defendants' contention as to Davis's alleged laches in claiming attorney's fees and back pay to be without merit; and its argument that these claims should be reduced or mitigated due to lack of diligence is rejected. As shown, Davis was extremely diligent in asserting his rights.

■ It was stipulated that, if Davis had not been dismissed, he would have earned $10,116.67 for the 1971–72 school term; $12,000.00 for the 1972–73 term; and $13,050.25 for the 1973–74 school term, or a total of $35,166.92 for the period from the time of his dismissal to the time that he resumed his duties as principal by order of this Court.

Davis' only earnings during the period of his dismissal was payment for his attendance at meetings and road inspections in performance of his duties as an elected member of the Concordia Parish Police Jury, and a small sum of approximately $400.00 earned as a beverage distributor during one summer (when school would not have been in session). We find that Davis could have and would have earned all of this money even if he had been employed as principal during this period.

Davis' uncontroverted testimony, and factors which we also judicially notice,

is to the effect that police jury meetings and road inspections for which he was compensated are performed outside of regular school hours, since police jurors serve only part-time, and normally hold regular employment in other work. There is no prohibition in Louisiana law against persons simultaneously holding elected office as a police juror and serving as a principal in a public school system.

Further uncontroverted testimony by Davis revealed that he is a black educator in his late 40's who always has pursued education as a career. He has worked most of his life for the Concordia Parish School Board as a teacher and principal. He owns a home in that Parish, and his wife, who was the sole family support during the period of his dismissal, is a tenured teacher with the Parish School System. His children attend public schools in that Parish, and he long has been active in civic and community affairs in the Parish. He is an elected member of the Concordia Parish Police Jury, the governing body of the Parish. During the period of his dismissal, he attempted to find employment, applying for a number of positions in education, and otherwise, including some outside of the Parish, but to no avail. Consequently, we find that Davis has done everything within reason to mitigate his damages; and accordingly no reduction or mitigation of the back-pay award would be appropriate.

■ The employer, not the employee, bears the burden of proving that damages to the employee could have been mitigated. Hegler v. Board of Education, 447 F.2d 1078, 1081 (8th Cir., 1971); Rolfe v. County Board of Education, 391 F.2d 77 (6th Cir., 1968). See also, White v. King, 319 F.Supp. 122, 124, 127 (E.D.La., 1970) and cases cited therein. The School Board offered no evidence concerning mitigation.

■ It is hornbook law that "the rule is well settled that a teacher is not bound to seek or accept other employment . . . in a different locality in order to mitigate the damages." 22

Am.Jur. § 54, p. 679; Am.Jur., verbo "Schools" (1st Ed., § 145). This rule has been applied specifically to situations such as this where the teacher's spouse was working in the community and, as a result, the teacher did not wish to leave it. *Hegler, supra.* In Jackson v. Wheatley School District, 464 F.2d 411, 413 (8th Cir., 1972), the Court held, under similar facts, that a teacher's duty to mitigate damages did not include an obligation to live away from her spouse, but rather the burden was on the Board of Education to prove that the teacher could have found a teaching position in or near the community where the family lived. The Court stated, " . . . We think that it is unreasonable to expect a married couple, such as the Jacksons, to maintain separate residences for the sole purpose of reducing damages caused by the unlawful actions of the school board."

■ We further find as a matter of law that salary earned during the period of dismissal from a job which the teacher could have held simultaneously with his teaching position is not to be deducted from a back-pay award. In Lucia v. Duggan, 303 F.Supp. 112, 119 (D.Mass., 1969), the Court stated the rule concisely: "No school committee regulation or rule prohibiting outside employment was indicated by the evidence; therefore no reduction should be made for wages and salary earned by plaintiff in the interim."

■ While there is some question whether the issue properly is before us, since the Fifth Circuit affirmed our back-pay award and remanded the case merely for possible proof as to mitigation, we find without merit defendants' contention that the Eleventh Amendment to the United States Constitution bars an award of back pay or attorney's fees here.

Even in Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 29 L.Ed.2d 662 (1974), relied on by defendants, the United States Supreme Court continued its explicit exception to the effect that local governing bodies such as this School Board are not covered by the Eleventh Amendment. At fn. 12, p. 667, the Court in *Edelman* distinguished and did not overturn its prior decision in Griffin v. School Board of Prince Edward County, 377 U.S. 218, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964), stating that "a county [Parish school board] does not occupy the same position as the State for the purposes of the Eleventh Amendment."

Under the peculiar circumstances of this case, neither the Eleventh Amendment nor *Edelman, supra,* stands as a bar to an award of back pay or attorney's fees. Louisiana school boards, including this defendant, are bodies corporate with the power to sue and be sued (L.S.A.–R.S. 17:51), to make contracts (L.S.A.–R.S. 17:81, 17:83), to purchase and hold property (L.S.A.–R.S. 17:81), and to sell property (L.S.A.–R.S. 17.87.-6). The members of the board are elected from districts within the Parish, and the board has power to, and in fact does, levy and collect taxes from which back-pay and attorney's fee awards can be met.

■ Louisiana courts consistently have held that school boards and similar autonomous political subdivisions are not the alter ego of the State, but are distinct from the standpoint of sovereign immunity. Board of C. P. of New Orleans v. Splendour S & E Co., (La. 1973), 273 So.2d 19, and Orleans Parish School Board v. Williams (La.App.1974), 300 So.2d 848. Federal district courts in Louisiana have reached the same conclusion. Morgan Dallas Corp. v. Orleans Parish School Board, 302 F.Supp. 1208 (E.D.La., 1969); Stapp v. Avoyelles Parish School Board, (U.S.D.C., W.D. La., Alexandria Division, No. 74–612, ruling and order of August 1, 1974, Scott, J.). See also, Downs v. Department of Public Welfare, 65 F.R.D. 557 (U.S.D.C., E.Pa.).

The Board here offered no evidence in support of its contention that the Eleventh Amendment is a bar to awarding back pay and attorney's fees, and we find that, under Louisiana statutory law and jurisprudence, this School Board is a distinct political entity from the State

within the meaning of the Eleventh Amendment.

██ Alternatively, we find that, since the individual members of the School Board, together with its Superintendent, are named as defendants individually acting under color of law, and have acted in violation of plaintiff's Fourteenth Amendment rights, the back-pay and attorney's fee awards could be satisfied from the pockets of these individuals, should perchance the Eleventh Amendment be considered as a bar to the School Board (as a separate entity) being liable for back-pay and attorney's fee awards.

■ ██ Under the circumstances and applying the standards set by the Fifth Circuit in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir., 1974), considering the Board's opposition to plaintiff's claim at every step in the legal process, and the size of the award of back pay to Davis, we find that an attorney's fee of $10,000:00 is appropriate.

A proper decree, in accordance with our rulings herein, should be presented by Davis' counsel, after approval as to form by defendant's counsel, within fifteen days.