Virginia E. DeFRIES, Plaintiff,

v.

Cal C. HAARHUES, William Bolger, in his official capacity as the Postmaster General of the United States Postal Service and The United States Postal Service, Defendants.

No. CV 79–0010.

United States District Court, C. D. Illinois.

Jan. 31, 1980.

---

Betsy Pendleton Wong, and Birch E. Morgan, Urbana, Ill., for plaintiff.

Robert P. Henderson, Senior Asst. Regional Labor Counsel, Chicago, Ill., for the Law Dept., Office of Labor Law, U. S. Postal Service, and Dorothy L. Lupton, Asst. Regional Labor Counsel, Chicago, Ill., and David E. Worsley, Asst. U. S. Atty., Danville, Ill., for defendants.

## JUDGMENT

BAKER, District Judge.

This is an action under the Federal Age Discrimination in Employment Act, (ADEA) 29 U.S.C. § 633a(a) & (c). The plaintiff claims that in May, 1977, she was a qualified employee of the United States Postal Service and an applicant for promotion to the job of multiple position letter sorting machine (MPLSM) supervisor in the Champaign, Illinois, Post Office. She further claims that she was denied that promotion, although she was qualified, because she was then 50 years of age.

The plaintiff seeks injunctive relief by promotion to the position of supervisor in the Postal Service and recovery of pay differential between that position and the position she held as clerk. She also seeks to recover attorneys fees and expenses.

Jurisdiction is based upon 28 U.S.C. § 1331.

In addition, the parties have stipulated that the plaintiff has fulfilled the statutory prerequisite for filing suit in this court under 29 U.S.C. § 633a(a). I assume, therefore, it is agreed that the plaintiff has exhausted the necessary administrative remedies before applying here for relief.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The court, pursuant to *Fed.R.Civ.P.* 52, makes the following findings of fact and conclusions of law.

29 U.S.C. § 633a provides in pertinent part:

"All personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . in the United States Postal Service . . . shall be made free from any discrimination based on age."

The Congressional statement of purpose is contained in § 621: "It is therefore the purpose of this chapter to promote employment of older persons based on their ability rather than age; . . . .."

■ In an action under the ADEA, the plaintiff has the burden of proving each of the following propositions by a preponderance of the evidence: First, that the plaintiff was an employee of the defendant within the statutorily protected age group; second, that a job vacancy existed to which the plaintiff sought promotion by the defendant; third, that the plaintiff was qualified for promotion to the vacancy; and fourth, that the plaintiff's age was a determining factor in the defendant's failure to promote her.

■ To prove that age was a determining factor in the defendant's failure to promote her, the plaintiff must persuade the court that age was more than a passing consideration on the part of the defendants. Age must have been a substantial and motivating factor in the consideration of the defendants and, but for the plaintiff's age, she would have been promoted. *Loeb v. Textron, Inc.*, 600 F.2d 1003 (1st Cir. 1979).

■ The allocation of the burden of proof in an age discrimination case is identical to that found in a Title VII sex or race discrimination case. That burden is described in *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The language in *Mt. Healthy City Board of Ed. v. Doyle*, 429 U.S. 274 at 287, 97 S.Ct. 568 at 576, 50 L.Ed.2d 471 seems applicable:

Initially, in this case, the burden was properly placed upon the respondent [the plaintiff here] to show that his conduct was constitutionally protected, and that this conduct was a 'substantial factor,'— or, to put it in other words, that it was a 'motivating factor' in the Board's decision not to rehire him. Respondent having carried that burden, however, the District Court should have gone on to determine whether the Board had shown by a preponderance of evidence that it would have reached the same decision as to respondent's reemployment even in the absence of the protected conduct.

In this case, for the plaintiff to succeed, the evidence must show that *but for* her age she would have received the appointment.

The position of MPLSM supervisor requires the ability to supervise a mechanic and a team of 18 operators working at a high rate of speed. The machine is a huge mechanism programmed by a computer with 12 operator consoles. It has two working sides. The operators sit on the side of the machine into which letters are loaded. By keying devices activated by the operators, the letters are sorted and dispatched to bins on the opposite side of the machine where other team personnel remove the sorted letters and send them on to further distribution.

The supervisor must see to it that the loading ledges for each operator are kept full; that the letters in the bins are removed promptly for distribution; and that each member of the team works rapidly. Letters pass through each operator's console at the rate of approximately 60 per minute. The supervisor must coordinate the operation so that it is smooth and continuous. To that end, the supervisor "edits" the work of the operators. A dozen times during the shift, the supervisor takes a test reading from the LSM which indicates the speed and accuracy of the operators.

It is clear from the evidence that the postal authorities knew that Champaign was to receive a letter sorting machine at least two years before the machine went into operation in 1977.

The Postmaster testified that the Post Office System began using the machine some 20 years earlier and that gradually the use of the LSM spread from the large urban areas to the less densely populated areas.

In early 1976, the defendants began to prepare for the coming of the machine and made staffing plans for the training of personnel to operate the machine.

At that time the plaintiff was working in the Champaign Post Office and had been employed in the Postal Service for 10 years. She began her employment as Postmaster in Melvin, Illinois, in April of 1967. Melvin, Illinois, is a small community. The duties of acting Postmaster were not demanding or complex, and in due course the plaintiff, after taking training and a clerk's examination which she passed in February of 1968, became employed at the Champaign, Illinois, Post Office as a clerk.

The record is replete with her accomplishments, training and abilities, as evidenced in plaintiff's exhibits 9, 10 and 12. Plaintiff's exhibit 10 is the evaluation of plaintiff by the Promotion Advisory Board. It shows that the plaintiff had superior ratings for the most part in all categories in which she was evaluated by the Promotion Advisory Board.

The defendants, in planning for the advent of the LSM, selected persons as "trainers" for the LSM. Two persons were selected. Three had been considered. They were selected on the basis of educational background, caliber of work performance, and notwithstanding its denial by the defendants, age. The three people considered for "trainer" were Gay Marsters, Michele Jordan, and Daniel Liffick. Their age ranged from 25 to 30 years. Marsters had a college degree and some teaching experience. Jordan had three years of college. Liffick was a young man who had some teaching experience in the Armed Services. Jordan and Liffick were selected; Marsters refused the opportunity.

Jordan and Liffick were selected as "trainers" directly by the Postal Manage-

ment. They were not picked through job-bidding or through solicitation of other Post Office employees. Management contended that it had the right to select the "trainers" and to decide what the job qualifications were. That fact adds to the circumstances which I believe show that management made age a determining factor in its decision on the plaintiff's promotion.

The "trainers" were sent to Springfield to be educated in the operation of the letter sorting machine. They also developed a training program for the employees in the Champaign Post Office who wished to receive training in the operation of the LSM.

At about the same time that Jordan and Liffick were selected as "trainers", the Postal Management selected two existing supervisors, Smith and Wolf, for the positions of MPLSM supervisors. Smith and Wolf were approached by management and asked if they were interested. Both said they were, and it is uncontested that the Postal Management was obligated to offer them the appointments because of their seniority. Smith and Wolf also went to Springfield to take training in the operation of the machine.

As the day approached for the letter sorting machines to go into operation, a turn of events occurred. Smith, the more senior of the two designated appointees, chose to succeed to the position of tour superintendent of the day shift at the Post Office. The postal authorities were left with a vacancy in the position of MPLSM supervisor.

The postal authorities followed the procedure for filling intermediate supervisory positions. They canvassed the district to see if excess supervisors were available. None were. They posted notices in the Champaign Post Office and received no responses from existing supervisors. Then, as the Champaign Postmaster testified, he established a Promotion Advisory Board to interview and list qualified candidates for the position of MPLSM supervisor.

The Promotion Advisory Board met, considered and rated the candidates. The board narrowed the field to four final candidates: The plaintiff, Michele Jordan, Daniel Liffick, and a man named Schlittler.

The evidence showed that three of the candidates, DeFries, Jordan and Liffick, received overall "A" ratings. DeFries received three "A" ratings, one from each member of the advisory board. Liffick also received three "A's" but Jordan received two "A's" and a "B", which was the equivalent of an overall rating of "A".

The Postmaster selected Jordan and appointed her on May 17, 1977.

The court finds that the plaintiff and the two other candidates, Liffick and Jordan, each possessed the necessary training and qualifications for the job of letter sorting machine supervisor. The Postmaster's description of the job reveals that a great deal of strength or dexterity is not required. Nor is it necessary that the supervisor be a well-qualified and proficient operator. To the contrary, under the collective bargaining agreement, the supervisor is not permitted to work at an operating position. The major requirement for a supervisor would be postal work experience, knowledge of the machine operation and demonstrated ability in handling personnel.

In making his selection, the Postmaster stated that he did not consider age, but that he relied upon the technical skills or ability of the applicants, their attitude toward the letter sorting machine as the main mail sorting and distribution device in the Postal System, and the sick leave usage of the applicants.

The court finds that the preponderance of the evidence indicates that while the reasons advanced may have been considered by the Postmaster, the age of the applicants was a motivating and substantial factor in his decision. I am compelled to that conclusion by some of the following aspects of the evidence.

The characteristics and experience that were exhibited by the plaintiff and by Jordan indicate that the plaintiff, as a postal clerk with supervisory experience, was better qualified than Jordan. There was no *bona fide* occupational qualification that the plaintiff lacked for the position.

It is a fair inference, and I draw that inference from the evidence, that the Postmaster did not want the "trainer" position posted for general bid because he intended to use the people who were selected as "trainers" for later appointments to supervisory positions. I am led to that conclusion by the Postmaster's testimony that he considered technical knowledge to be an overriding prerequisite in the selection of an LSM supervisor. He deliberately selected people between the ages of 25 and 30 years to send to the training school to acquire that technical knowledge which was, in his words, the "overriding consideration" in the selection of an MPLSM supervisor.

The fact that the Postmaster considered only the "overall" ratings of the Promotion Advisory Board indicates to me that he had a predisposition, or mind set, regarding who was qualified and what was the determinative factor for selection.

The eventual appointment of Liffick is another circumstance from which I find that it was the Postmaster's intention to select "trainers" who were young and who would eventually succeed to a supervisory position. The Postmaster testified that it had always been Michele Jordan's intention to return to college, and, in fact, she left the postal service a year after her promotion to supervisor to complete her education. She was succeeded by Mr. Liffick, the other "trainer" who was one of the persons 25 to 30 years of age who were originally considered for "trainers."

Looking beyond the summary of the qualifications of the candidates, it is apparent to the court from plaintiff's exhibits 9 and 10 that the plaintiff's superior ratings put her in a class above the successful applicant, Jordan. I can only conclude that the candidates' overall qualifications for the job did not play an important role in the Postmaster's mind. He had a formed intent before he considered the applicants for appointment.

The evidence is persuasive that age was a determining and motivating factor in the selection of the candidate. The evidence I find persuasive in that regard are the statements made at the labor management meeting on March 4, 1976 and the testimony of the witnesses Ruffin and Simmons. When asked why the "trainer" positions were not put up for bid, the Postmaster maintained that those appointments belonged to him and that the letter sorting machine required operation by young people. I find this is very persuasive of postal management's mind set on the subject.

I do not believe that the applicants' sick leave records were a substantial criterion for selection. The difference in sick leave use, considering the length of service of DeFries and Jordan and the fact that DeFries had major surgery and was required at one point to be absent for a long period, is inconsequential. The court finds that there wasn't such a difference in the sick leave records of the candidates that DeFries could be disqualified on that basis.

I find nothing in the evidence to indicate that the plaintiff did not have as accepting an attitude toward the use of the letter sorting machine as the primary method of mail distribution and sorting in the Champaign Post Office as did the other candidates. I find that this could not be a motivating factor for failing to promote the plaintiff.

The Postmaster, in answer to a question asked him by the court, denied that the final choice was between the plaintiff and Jordan. Yet he did frankly admit that the equal opportunity employment program of the Postal Service "encouraged" him, or gave him impetus, toward promoting a woman to a supervisory position.

The witness Bernard Smith heard the Postmaster ask two young women in the Post Office if they were interested in a supervisory position. That is consistent with the Postmaster's testimony that it was incumbent upon him to try to solicit advancement of women within the Postal Service.

It is a fact that can't be overlooked in weighing the evidence that Jordan was the first person, irrespective of sex, ever promoted to a supervisory position without prior experience as a supervisor.

In judging credibility I have to say that I think the Postal Service was looking to promote a woman. I find they were. I further find from the evidence, and am compelled to the conclusion, that the promotion decision came down to a choice between the plaintiff and Jordan.

I frankly discount the testimony concerning the conversation between the plaintiff and the Postmaster about the Daily Illini newspaper interview. I think his remark was innocuous and trivial. He says he doesn't remember whether he made it or not. This is understandable, because "now everyone knows your age" was probably said in a facetious or jocular manner.

■ The court concludes that the plaintiff has sustained her burden of proving that age was a motivating factor in her rejection as a candidate for promotion; that it is more probably true than not true that age was the motivating factor; that the reasons advanced by the defendant for failing to select her are pretext in the legal sense because age was the motivating and substantial factor in the consideration of the postal management.

*Mastie v. Great Lakes Steel Corp.*, 424 F.Supp. 1299 (E.D.Mich.1976) involved a claim under the parallel statute, 29 U.S.C. § 631, in a private employment relationship. In that case the court discusses the burden of proof upon the plaintiff and holds that the plaintiff must show by the preponderance of evidence that age was the motivating factor in failing to appoint. Unlike *Mastie*, where the plaintiff was passed over in favor of better qualified applicants, the evidence presented in this record shows that the plaintiff had superior credentials and qualifications for the supervisory position to which a younger person was appointed.

■ The plaintiff is entitled to a mandatory order that she be promoted to the first LSM supervisory position or comparable supervisory position which becomes vacant in the Champaign Post Office. In addition, the plaintiff is entitled to recover as damages the difference between the compensation she would have received as LSM Super-

visor and the compensation that she received in the clerk's position in which she was employed. The award runs from May 16, 1977, the date of her nonselection, to such date as she is given a comparable supervisory position. *Jones v. Cleland*, 466 F.Supp. 34 (N.D.Ala.1978). Further, the plaintiff is to be compensated at supervisory rates for all work performed (including base salary, night differential, and overtime) from January 23, 1980 until she is advanced to supervisor.

■ The purpose of a back pay award is to make the victim of discrimination whole. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). To accomplish that purpose in this case, the plaintiff must be compensated as a supervisor from the date of her nonselection. Obviously, the award must include the differential between the LSM supervisor's base rate of pay plus night differential and the base rate of pay plus night differential for the clerk's position which she received. In addition, it has been established that LSM supervisors worked an average of 101.25 hours of overtime during the award period. The evidence further shows that the plaintiff worked approximately 341 hours of overtime as a clerk during the same period. Therefore, the plaintiff, to be made truly whole, must receive the differential between the overtime pay for supervisors and clerks for the average 101.25 hours worked by LSM supervisors.

As for the some 240 remaining hours of overtime compensation received by the plaintiff, the court declines to deduct it from the back pay award; to do so would punish the plaintiff. By way of analogy, the courts have recognized that earnings derived from moonlighting should not be subtracted from a plaintiff's back pay award if the plaintiff could hold the supplemental job and the desired full time job simultaneously and there was reason to believe it would be done. *Bing v. Roadway Express, Inc.*, 485 F.2d 441 (5th Cir. 1973), *Smith v. Concordia Parish School Board*, 387 F.Supp. 887 (W.D.La.1975). In this

case, the plaintiff's additional earnings were derived from her regular job rather than from a second job. They came in the form of overtime hours. But the policy remains the same. The plaintiff should not be punished for additional earnings if she could earn them while holding the desired position and if there is reason to believe she would do so. Counsel for the defendant argues that the plaintiff could not work overtime *as a clerk* after she was promoted to supervisor and that, therefore, the moonlighting analogy does not apply. Counsel's argument loses sight of the broad policy behind such awards. The plaintiff has demonstrated that she worked 341 hours of overtime. The supervisor's job required only 101 hours of overtime. She had some 240 hours of additional earnings which she would have been free to earn albeit at another job, while still holding the position of supervisor. Thus, the failure to subtract such earnings from a back pay award does not constitute a windfall to the plaintiff. To the contrary, in cases such as this, where the plaintiff worked overtime hours in excess of those which would have been required in the desired position under the same employer, to deduct those earnings from her back pay award would be to punish the plaintiff for her initiative and to doubly benefit the employer who discriminated against her by allowing the employer both to benefit from her overtime efforts and to subtract such earnings from the back pay award.

■ Interest is also generally awardable under the "make whole" policy of the ADEA. *Jones v. Cleland, supra.* Section 626(b) of the ADEA provides that back pay awards shall be enforced as provided for under § 216 of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (1965). Under that act, interest is awardable to help effect "a restoration of the situation, as nearly as possible, to that which would have obtained but for the illegal discrimination." *Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 61 S.Ct. 845, 85 L.Ed. 1271 (1941), *NLRB v. American Compress Warehouse*, 374 F.2d 573 (5th Cir. 1967).

29 U.S.C. § 633a(f), however, provides:

(f) Any personnel action of any department, agency, or other entity referred to in subsection (a) of this section shall not be subject to, or affected by, any provision of this chapter, other than the provisions of section 631(b) of this title and the provisions of this section.

Admittedly, the Postal Service comes within the proscriptions of § 633a(f). 29 U.S.C. § 633a(a) (Supp.1979). This, however, does not change the court's conclusion. By the plain language of § 633a(f), the Postal Service remains subject to § 633a(c), which provides:

(c) Any person aggrieved may bring a civil action in any Federal district court of competent jurisdiction *for such legal or equitable relief as will effectuate the purpose of this chapter.* (emphasis added)

As discussed above, Congress and the courts have already determined that an award of interest "effectuates the purposes" of the ADEA.

■ Similarly, counsel for the defendant argues that § 633a(f) precludes any award of attorneys fees and costs against the United States Postal Service. The successful plaintiff in an action under the ADEA is generally entitled to recover reasonable attorneys fees and expenses. 29 U.S.C. § 216, which is incorporated by reference into the ADEA, provides in pertinent part that:

. . . [a]n action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction . . . . The court in such action shall, in addition to any judgment awarded to the plaintiff . . . *allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.* (emphasis added)

In *Rogers v. Exxon Research & Engineering Co.*, 550 F.2d 834, 842 (3rd Cir. 1977) the court said:

Section 216(b) of the Fair Labor Standards Act provides that in a suit by an employee the court " 'shall in addition to

any judgment awarded to the plaintiff or plaintiffs allow a reasonable attorney's fee to be paid by the defendant.' " This provision is incorporated into the ADEA, 29 U.S.C. § 626(b). Consequently, attorneys' fees are to be awarded in age discrimination suits in which the employee prevails. *Brennan v. Ace Hardware Corp.,* 495 F.2d 368, 374 (8th Cir. 1974); *Monroe v. Penn-Dixie Cement Corp.,* 335 F.Supp. 231, 235 (N.D.Ga.1971); *cf. Stringfellow v. Monsanto Co.,* 320 F.Supp. 1175 (W.D.Ark.1970); Note, *Age Discrimination In Employment Under Federal Law,* 9 Ga.St.B.J. 114, 127 (1972).

 Therefore, as discussed above, Congress and the courts have already determined that an award of reasonable attorneys fees and costs "effectuates the purposes" of the ADEA. 29 U.S.C. § 633a(c) (1975). Obviously in cases such as this, where the attorneys fees exceed the amount of damages awarded, the ADEA risks becoming a nullity if attorneys fees cannot be awarded the prevailing plaintiff.

IT IS THEREFORE ORDERED that the defendants promote the plaintiff to the first letter sorting machine supervisory position or a comparable supervisory position which shall become vacant in the Champaign Post Office, Champaign, Illinois.

IT IS FURTHER ORDERED that the defendants compensate the plaintiff from this date forward at supervisor pay rates for all work performed by her from this date forward as a clerk in the postal service. This provision of this order shall remain in effect until such date as the plaintiff is promoted to the position of supervisor as provided for herein.

IT IS FURTHER ORDERED that the plaintiff have and recover of the defendants the sum of $7,828.01 as differential between the base pay, night differential and bonuses she would have received as supervisor and those she received as clerk during the award period; the sum of $114.45 as differential between the overtime compensation she would have received for 101.25 hours as a supervisor and the overtime compensation she received for the same number of hours as a clerk; plus interest at the statutory rate on the total sum.

IT IS FURTHER ORDERED that plaintiff have and recover from the defendants the sum of $8,400.00 as a reasonable attorneys fee and that she also recover $458.20 in costs.