**Bess KENNEDY, Appellant,**

v.

**William H. WHITEHURST, Acting Director, Department of Human Services.**

No. 81–1374.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 12, 1982.

Decided Sept. 17, 1982.

Stephen A. Goldberg, Washington, D. C., with whom Jean S. Moore, Elliot M. Mincberg, and Joel P. Bennett, Washington, D. C., were on the brief, for appellant.

Richard B. Nettler, Asst. Corp. Counsel, Washington, D. C., with whom Judith W. Rogers, Corp. Counsel, Charles L. Reischel, Deputy Corp. Counsel, and Melvin Bolden, Asst. Corp. Counsel, Washington, D. C., were on the brief, for appellee.

Michael R. Schuster, Washington, D. C., was on the brief for Legal Counsel for the Elderly, amicus curiae, urging reversal.

Before TAMM, Circuit Judge, ROBB, Senior Circuit Judge, and HOWARD T. MARKEY,* Chief Judge, United States Court of Customs & Patent Appeals.

Opinion for the court filed by Circuit Judge TAMM.

TAMM, Circuit Judge:

This case presents the question whether, under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–634 (1967 & Supp. IV 1980) (ADEA or the Act), federal employees who gain redress at the administrative level are entitled to recover attorneys' fees for legal services rendered at that stage. United States District Judge Oliver Gasch ruled that Congress had not provided the requisite statutory authorization for an award of fees in cases in which the process of administrative conciliation is successfully employed in the federal employee's favor, and he accordingly denied appellant Bess Kennedy's prayer for such an award against appellee William Whitehurst, the Acting Director of the District of Columbia Department of Human Services (DHS). Since the date of Judge Gasch's ruling, two other district judges have considered the same issue and have reached the identical result, though each judge employed a slightly different reasoning. Although we too shall travel a somewhat different course than did Judge Gasch in considering the question, we agree that federal employees who prosecute successfully claims of age discrimination under the ADEA at the administrative level are not entitled to an award of attorneys' fees. Accordingly, we affirm.

I.

To the old adage that death and taxes share a certain inevitable character, federal judges may be excused for adding attorneys' fees cases. The years that have elapsed since the Supreme Court confirmed the prevalence of the so-called "American Rule" that requires each party to bear its own counsel fees absent a contrary statutory provision or common law exception, *see Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975), have witnessed no abatement in the number of cases involving attempts to shift the incidence of the costs of lawyers. The judicial focus has, rather, shifted from consideration of the inherent equitable power of courts to award attorneys' fees to the construction of the plethora of federal statutes enacted to create exceptions to the American Rule. There are more than 120 federal statutes authorizing the award of counsel fees in specified situations,[1] many of which were enacted in response to the *Alyeska* decision. In recent years this court and many others have attempted to establish doctrines to govern the exercise of a trial judge's statutory discretion to award attorneys' fees[2]

---

* Sitting by designation pursuant to 28 U.S.C. § 293(a) (1976).

1. *See* 4 Fed. Attorney Fee Awards Rep. 2–3 (Harcourt Brace Jovanovich) No. 6 (October 1981). Before the decision in *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), approximately thirty federal statutes authorized courts to award attorneys' fees. *Alyeska,* 421 U.S. at 260 n.33, 95 S.Ct. at 1623 n.33.

2. *Compare Newman v. Piggie Park Enterprises,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968) (per curiam) (prevailing plaintiffs in civil rights cases entitled to fee awards "unless special circumstances would render such an award unjust"), *with Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 422, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978) (prevailing defendants in civil rights suits entitled to fee award only when plaintiff's underlying claim is

and have sought to give content to terms of art such as "prevailing party"[3] and "reasonable fee."[4]

We may well expect this boom of litigation involving attorneys' fees to continue. In the civil rights area in particular, Congress has wholeheartedly embraced the "private attorney general" rationale and accordingly has encouraged private action to implement public policy through the subsidization of the work of plaintiffs' counsel by private and government defendants. The Supreme Court in *Newman v. Piggie Park Enterprises,* 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968), made clear that the congressional policy favoring private enforcement of civil rights legislation mandated a liberal construction of attorneys' fees provisions in the area of personal rights. 390 U.S. at 401–02, 88 S.Ct. at 965–66. Because the right to seek and maintain employment in an environment free from age discrimination has now been declared such a civil right, we view as fundamental this mandate of a broad reading of the remedial provisions at issue in the instant case. *See Rodriguez v. Taylor,* 569 F.2d 1231, 1244 (3d Cir. 1977) ("unqualified legislative and judicial authority for an award of fees to *all* successful plaintiffs" in ADEA cases).

Nevertheless, courts considering prayers for attorneys' fees must bear in mind the *Alyeska* Court's admonition that specific statutory authorization for an award of fees is required before the incidence of counsel costs can be shifted. *Rodriguez,* 569 F.2d at 1245. This admonition is buttressed by the doctrine of sovereign immunity where attorneys' fees are sought against the federal government; we have held that a waiver of that immunity with regard to an award of attorneys' fees must

either be express or manifest from the relevant legislative history. *See Fitzgerald v. United States Civil Service Comm'n,* 554 F.2d 1186, 1189 & n.8 (D.C.Cir.1977); *see also United States v. King,* 395 U.S. 1, 3–5, 89 S.Ct. 1501, 1502–03, 23 L.Ed.2d 52 (1969); *NAACP v. Civiletti,* 609 F.2d 514, 516 (D.C. Cir.1979), *cert. denied,* 447 U.S. 922, 100 S.Ct. 3012, 65 L.Ed.2d 1114 (1980). Thus, federal courts lack the power to award attorneys' fees to a prevailing party against the government where the only justification is that public policy favors an award. As we noted in *Fitzgerald,* even if a denial of fees might " 'make a mockery and a sham of the mandate of Congress,' " no award can be made absent express statutory authorization. 554 F.2d at 1190 (quoting *Fitzgerald v. United States Civil Service Comm'n,* 407 F.Supp. 380, 386 (D.D.C.1975)). Arguments centering on the inequities caused by the absence of fee-shifting are properly addressed to the Congress and not to the courts.

It is against this backdrop that we consider appellant's request for attorneys' fees.

### A. The Facts

Neither party questions the factual findings of the district judge. Appellant Bess Kennedy has since 1970 been an employee of the District of Columbia DHS and of its predecessor agency, the Department of Human Resources. In 1978 appellant, then a sixty-two-year-old white female employed as a GS–9 Social Service Representative, applied for a promotion to fill one of twelve vacant positions as a GS–11 Supervisory Social Service Representative. She also applied for a promotion to a position as a GS–11 Employee Development Specialist. Appellant was denied both promotions, the

---

"frivolous, unreasonable, or groundless"). *See generally Roadway Express, Inc. v. Piper,* 447 U.S. 752, 762, 100 S.Ct. 2455, 2462, 65 L.Ed.2d 488 (1980) (distinction between fee awards to civil rights plaintiffs and defendants "advances the congressional purpose to encourage suits by victims of discrimination while deterring frivolous litigation").

**3.** *See, e.g., Maher v. Gagne,* 448 U.S. 122, 129–30, 100 S.Ct. 2570, 2574–75, 65 L.Ed.2d 653

(1980) (fact that plaintiff "prevailed" through settlement rather than litigation does not compromise right to counsel fees under Civil Rights Attorney's Fees Awards Act of 1976).

**4.** *See, e.g., Copeland v. Marshall,* 641 F.2d 880 (D.C.Cir.1980) (en banc); *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 540 F.2d 102 (3d Cir. 1976) (en banc).

first in November 1978 and the second in March 1979.

In August 1979 Mrs. Kennedy filed a complaint with the District of Columbia's Office of Human Rights in which she alleged that the promotion denials were the result of discrimination on the bases of race, gender, and age.[5] In September 1979 appellant filed a complaint alleging only age discrimination with the United States Equal Employment Opportunity Commission (EEOC).[6] Mrs. Kennedy was assisted by counsel in the preparation of both complaints and in the administrative proceedings that followed.

The administrative efforts at resolution of the dispute proved successful, with no judicial proceedings of any kind required to secure the relief accorded appellant. The parties and the EEOC negotiated a settlement agreement that, as appellant notes, appears to have resolved the age discrimination claim in her favor and that provided for her retroactive promotion to the GS–11 level with an award of back pay.[7] The settlement agreement did not, however, provide for an award of attorneys' fees.

After this success at the administrative level, appellant filed a request with the DHS for the cost of the legal services pro-vided on her behalf before the EEOC. The DHS denied the request, contending that it lacked the statutory authority to award fees.[8] Mrs. Kennedy then filed in the district court the complaint that instituted the instant litigation, contending that, as a prevailing party[9] under the ADEA, she was entitled to an award of attorneys' fees for the costs of counsel she incurred at the administrative level. Appellant Kennedy thereupon moved for summary judgment, arguing that the language of the ADEA authorized an award of fees to a federal employee who prevails exclusively through administrative proceedings.

Assuming both that a competitive service employee of the DHS is a federal employee for the purposes of the ADEA and that federal employees have the same rights to attorneys' fees under the Act as do private sector workers, the district court nonetheless held that the ADEA did not authorize an award of fees for legal services rendered at the administrative level. *Kennedy v. Whitehurst,* 509 F.Supp. 226, 231–32 (D.D.C. 1981). The district judge concluded that, although an award of such fees might be a sound policy result, Congress had failed, perhaps inadvertently, to empower courts

---

**5.** Complaint, *Kennedy v. Department of Human Resources,* District of Columbia Office of Human Rights Docket No. 9-DC–598 (filed Aug. 22, 1979), Joint Appendix (J.A.) at 19–20. On May 14, 1980, this complaint was dismissed by the Office of Human Rights because investigation revealed no evidence to support the discrimination allegations. Memorandum from Anita Bellamy Shelton, Director, Equal Employment Opportunity, Office of Human Rights, to James Buford, Director, Office of Human Rights (May 14, 1980), J.A. at 26. After that dismissal, however, the complaint was remanded to the Office of Human Rights for further consideration. *See Kennedy v. Whitehurst,* 509 F.Supp. 226, 227 n.1 (D.D.C.1981).

**6.** Charge of Age Discrimination, Equal Employment Opportunity Commission Charge No. 032–798025 (Sept. 10, 1979), J.A. at 17–18.

**7.** An employee of the Equal Employment Opportunity Commission (EEOC) concluded that "age was a factor" in the denial of a promotion to appellant and recommended certain remedial action as a response. Letter from May Short, Equal Opportunity Specialist, Equal Employment Opportunity Commission, to Albert P.

Russo, Director, Department of Human Resources (Dec. 13, 1979), J.A. at 21. The Department of Human Resources, although it carried out the recommended remedial action, conceded only that it "appear[ed] that age was a factor" in the denial of a promotion to appellant. Letter from Albert P. Russo, Director, Department of Human Resources, to May Short, Equal Opportunity Specialist, Equal Employment Opportunity Commission (Jan. 23, 1980), J.A. at 22.

Although they pressed the point in the district court, appellees do not contend here that appellant was not a prevailing party under the Age Discrimination in Employment Act (ADEA). Accordingly, we assume, as did the district judge, that appellant prevailed under the ADEA. *See Kennedy v. Whitehurst,* 509 F.Supp. at 227.

**8.** Letter from William H. Whitehurst, Acting Director, Department of Human Resources, to Joel P. Bennett, Esq. (Mar. 28, 1980), J.A. at 25.

**9.** *See supra* note 7.

to award counsel fees for legal work done before administrative agencies. *Id.* at 231 & n.11. As no material facts were in dispute and as the dispositive legal question had been fully briefed, the court *sua sponte* entered summary judgment in favor of the government agency. *Id.* at 231–32. This appeal followed.

### B. *The Statutory Background*

The relevant provisions of the ADEA are, regrettably, a model in imprecision. The ADEA was passed in 1967 to protect older members of the nation's workforce from discrimination premised on age differences. *Lorillard v. Pons,* 434 U.S. 575, 577, 98 S.Ct. 866, 868, 55 L.Ed.2d 40 (1978). As originally enacted, the ADEA applied only to employees in the private sector and adopted as its private enforcement mechanism the compliance scheme that obtained under the Fair Labor Standards Act, 29 U.S.C. §§ 201–219 (1976 & Supp. IV 1980) (FLSA). The relevant ADEA language appears in section 7(b) of the Act and provides:

> The provisions of this chapter shall be enforced in accordance with the powers, remedies, and procedures provided in sections 211(b), 216 (except for subsection (a) thereof), and 217 of this title . . . .

ADEA § 7(b), 29 U.S.C. § 626(b) (1976). The critical cross-reference for present purposes is to section 16 of the FLSA, 29 U.S.C. § 216 (1976 & Supp. IV 1980). In pertinent part, that section provides:

> An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in

any Federal or State court of competent jurisdiction . . . . The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.

29 U.S.C. § 216(b) (1976 & Supp. IV 1980). This incorporation by reference makes it clear that, at a minimum, a private sector employee who secures a judgment in litigation under the ADEA is additionally entitled to an award of attorneys' fees against the defendant.

In 1974 Congress amended the ADEA to bring federal employees under the Act's protective umbrella. As amended, section 15 of the ADEA, 29 U.S.C. § 633a (1976 & Supp. IV 1980), "prohibits age discrimination in federal employment." [10] *Lehman v. Nakshian,* 453 U.S. 156, 162, 101 S.Ct. 2698, 2702, 69 L.Ed.2d 548 (1981). Section 15(c) of the ADEA, 29 U.S.C. § 633a(c) (1976), supplies the means for judicial enforcement of the prohibition against age discrimination; it provides:

> Any person aggrieved may bring a civil action in any Federal district court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter.

Although this language is quite broad and tracks the wording of the provision of the ADEA covering private sector employees,[11] section 15 does not include the language contained in section 7 that incorporates the FLSA remedial scheme. Thus, in contrast to the ADEA private enforcement scheme detailed in section 7 through reference to FLSA section 16, the Act's federal employ-

---

**10.** ADEA section 15(a) provides:

> All personnel actions affecting employees or applicants for employment who are at least 40 years of age (except personnel actions with regard to aliens employed outside the limits of the United States) in military departments as defined in section 102 of title 5, in executive agencies as defined in section 105 of title 5 (including employees and applicants for employment who are paid from non-appropriated funds), in the United States Postal Service and Postal Rate Commission, in those units in the government of the District of Columbia having positions in the

competitive service, and in those units of the legislative and judicial branches of the Federal Government having positions in the competitive service, and in the Library of Congress shall be made free from any discrimination based on age.

29 U.S.C. § 633a(a) (Supp. IV 1980).

**11.** Section 7(b) of the ADEA, 29 U.S.C. § 626(b) (1976), provides, in pertinent part, that any court enforcing the statute "shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter . . . ."

ee compliance scheme contains no *explicit* reference to the provision of any form of attorneys' fees. Rather, federal courts are simply empowered to grant such relief "*as will effectuate the purposes*" of the Act. 29 U.S.C. § 633a(c) (1976) (emphasis added).

Perhaps the most difficult and confusing issue in the instant case involves the relationship between the public and private sector enforcement schemes. In 1978 amendments to the ADEA, Congress added a subsection (f) to the federal compliance mechanism contained in section 15 that, literally read, mandates a complete divorce between the two schemes. The new subsection, 29 U.S.C. § 633a(f) (Supp. IV 1980), provides:

> Any personnel action of any department, agency, or other entity referred to in subsection (a) of this section shall not be subject to, or affected by, any provision of this chapter, other than the provisions of section 631(b) of this title and the provisions of this section.

*Id.; see supra* n.10. As the district judge noted in the case at bar, a strict reading of this subsection would require that questions involving attorneys' fees under section 15— and, for that matter, all issues of relief and remedies for federal employees under the ADEA—be resolved by exclusive reference to the terms of that section. *Kennedy,* 509 F.Supp. at 228–29. The district judge declined to separate so rigidly the two enforcement patterns, however, in light of his conclusion that neither the public sector nor the private sector enforcement schemes under the ADEA authorized an award of attorneys' fees for legal services performed at the administrative level. *Id.* at 229, 231–32.

As the government appellee notes, however, an opinion of the Supreme Court that issued subsequent to the district judge's decision in this case casts additional light on the relationship between sections 7 and 15 of the ADEA. In *Lehman v. Nakshian,* 453 U.S. 156, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981), the Court ruled that, although a *private* employee who brings an action under section 7 of the ADEA *does* have the right to a jury trial, a *federal* employee suing under section 15 does *not* have that

right. *Id.* at 165, 101 S.Ct. at 2704. Writing for a closely divided court, Justice Stewart stressed the divergence of the public and private employee enforcement schemes; citing the subsection (f) added in 1978, the Court stated that "Congress did not incorporate the FLSA enforcement scheme into § 15," but rather patterned the enforcement mechanism for federal employees after those sections of the Civil Rights Act of 1964 that extended the protection of Title VII to federal employees. *Id.* at 163–64, 101 S.Ct. at 2703. Justice Stewart relied on the House Report accompanying the 1978 ADEA amendments, which stated that "Section 15 . . . is complete in itself." H.R. Rep.No.527, 95th Cong., 1st Sess. 11 (1977). The Court concluded that the federal employee enforcement provision is "self-contained and unaffected by other sections" of the ADEA. *Nakshian,* 453 U.S. at 168, 101 S.Ct. at 2705.

We are left, then, with the following matrix. It is clear that Congress intended that sections 7 and 15 of the ADEA be distinct enforcement mechanisms; the Supreme Court's holding in *Nakshian* clearly indicates that different rights and remedies may obtain under each of the two enforcement schemes. By the same token, the Court's ruling suggests, as appellant notes, that the enforcement mechanisms for federal employees under the ADEA and Title VII are similar and should be construed *in pari materia.* As we shall discuss below, the Court's decision in *Nakshian* provides grist for the mills of both the appellant and the government appellee.

## C. *The District Judge's Ruling*

The district judge properly treated appellant, a competitive service employee of the District of Columbia, as a federal employee for the purposes of the ADEA. *Kennedy,* 509 F.Supp. at 228 (D.D.C.1981) (citing 29 U.S.C. § 633a(a) (Supp. IV 1980)). He accordingly shifted the focus of his consideration to the rights of federal employees under the ADEA and to the relationship of section 15 to the ADEA's private enforcement provisions. Fearing that a "literal

interpretation" of the language of subsection (f) of section 633a would prove too much by creating totally distinct public and private enforcement schemes, the district judge assumed, *arguendo,* that federal employees have the same right to attorneys' fees for legal services performed at the administrative level under the ADEA as do private sector employees; in light, perhaps, of the fact that his decision antedated *Nakshian,* the district judge was unwilling to assume that a strict dichotomy between the rights and remedies of federal and private sector employees existed. *Kennedy,* 509 F.Supp. at 228–29. These assumptions were critical, for they necessarily meant that the attorneys' fees inquiry would turn on analysis of the more generous language of section 7, which contains a specific reference to the provision of such fees.

Even this favorable assumption proved of no avail to Mrs. Kennedy, however. She argued in the district court that the ADEA should be read to permit a fee award for administrative legal services, just as similar language in Title VII had been construed to ground such awards. *See Smith v. Califano,* 446 F.Supp. 530 (D.D.C.1978) (Gasch, J.). Mrs. Kennedy contended that the analogy between the two pieces of civil rights legislation is strong: both the ADEA and Title VII are broad, remedial statutes designed both to proscribe discrimination and to "make whole" those who are the victims of forbidden personnel practices.

The district judge rejected the proposed analogy. Although he noted that both the ADEA and Title VII were appropriately given liberal construction, the *differences* between the enforcement schemes of each made clear that only under the Title VII regime is an award of attorneys' fees permitted for administrative legal services. The district judge's scrutiny of the relevant statutory language made clear that the authorization of attorneys' fee awards is broader under Title VII than under the ADEA; while Title VII permits fee awards

in any "action or proceeding," the FLSA language contained in the ADEA authorizes awards only to a "plaintiff or plaintiffs" who secure a "judgment" in an "action." [12] Relying on a similar parsing of statutory language conducted by the Supreme Court in *New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980), the district judge concluded that the ADEA's use of words suggesting a litigative context indicates that fees are to be awarded only in a court "action" and not in an administrative "proceeding." *Kennedy,* 509 F.Supp. at 230.

Recognizing the formalistic overtones to such a distinction, the district court found that a structural comparison of Title VII—under which an award of fees for administrative legal services *has* been held authorized [13]—and the ADEA further dictated the conclusion that Congress did not contemplate an award of fees for legal services performed at the administrative level in the age discrimination context. While Title VII's enforcement scheme mandates the exhaustion of administrative remedies before a lawsuit may be filed, the ADEA mechanism requires as a practical matter only that notice be given the government of the existence of a complaint. As the district judge put the matter, pursuit of ADEA administrative remedies is "optional and not a mandatory prerequisite to the filing of a civil action." *Id.*

The district court concluded that the enforcement procedures of the ADEA and Title VII were structured in a purposefully divergent fashion by the Congress: "in ADEA actions, unlike Title VII actions, administrative proceedings are not a pervasive and integral part of the overall scheme of enforcement." *Id.* at 231. In particular, the district judge noted, ADEA administrative proceedings lack the "adversarial nature" of Title VII's administrative process; whereas Title VII mandates the presentation of the complainant's case at the admin-

---

**12.** *Compare* § 706(k) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(k) (1976), *with* Fair Labor Standards Act § 16(b), 29 U.S.C. § 216(b) (Supp. IV 1980).

**13.** *See Smith v. Califano,* 446 F.Supp. 530 (D.D.C.1978).

istrative level, all the ADEA demands at that stage is notice of a complaint. *Id.* at 230–31. In the absence of a sufficiently specific congressional authorization of fee awards at the administrative level, the district judge invoked the *Alyeska* presumption against the shifting of the cost of legal services and entered summary judgment in appellee's favor.

## D. *Related Cases*

Subsequent to the district court's judgment in the instant case, that court reached the identical result in two other cases, albeit by somewhat divergent means. In *Muth v. Marsh,* 525 F.Supp. 604 (D.D.C.1981), Judge Gesell concluded that the decision of the Supreme Court in *Nakshian* had made clear that, although both private sector and federal employees are protected under the ADEA, Congress has created *alternative* remedial schemes for each class of employees. Thus, he concluded, ADEA section 15 does not incorporate the remedial scheme of section 7, and the structure of remedies for each employee group differs. Examining only the language of section 15, Judge Gesell found it too general to permit an award of attorneys' fees and refused to make such an award to a federal ADEA complainant who had prevailed at the administrative level.

In *Swain v. Secretary,* 28 Empl.Prac.Dec. (CCH) ¶ 32,574, at 24,585 (D.D.C. Jan. 19, 1982), Judge Pratt similarly ruled that a federal ADEA complainant who secured relief through administrative proceedings was not entitled to an award of counsel fees.

Finding the issues in *Swain* "strikingly similar" to those the district court faced in *Kennedy, Swain* at 24,587, Judge Pratt concluded that both the language of the relevant FLSA provision and the statutory scheme of the ADEA indicates that Congress did not intend an award of attorneys' fees at the administrative level to age discrimination claimants. He noted that in contrast to the administrative exhaustion requirement mandated by Title VII, the ADEA administrative scheme is only "an alternative option" to the commencement of judicial proceedings. *Id.* Thus, the district judge reasoned, because the ADEA enforcement scheme provided the complainant with the option of proceeding initially in federal court after simple administrative notice, the denial of counsel fees at the administrative stage was not an inappropriate result.[14]

## E. *Summary of the District Court Rulings*

Scrutiny of the district court opinions in *Kennedy, Muth,* and *Swain* reveals two distinct paths to the same result of denying a fee award to federal employees who prevail at the administrative level under the ADEA. Under the approach adopted by the *Kennedy* and *Swain* courts, federal and private sector employees are treated similarly for ADEA remedial purposes;[15] the necessary implication of this assimilation would seem to be that employees in *neither* class are entitled to an award of counsel fees when relief is obtained through administrative proceedings.[16] By contrast, under the approach adopted by the *Muth* court,

---

**14.** Mention should also be made at this point of *DeFries v. Haarhues,* 488 F.Supp. 1037 (C.D.Ill. 1980), in which the court held that a prevailing federal age discrimination complainant is entitled under § 15(c) of the ADEA to an award of attorneys' fees for services rendered in connection with *judicial* processes. Relying on the general language of § 15(c), the *DeFries* court ruled that an award of attorneys' fees to federal employees "effectuates the purposes" of the ADEA and is thereby authorized. *Id.* at 1045. The *DeFries* case is discussed at p. 963, *infra.*

**15.** This similarity of treatment was an explicit assumption in *Kennedy. See* 509 F.Supp. at 228 29. In *Swain,* although the district judge

suggested that his decision was limited to ADEA claims involving *federal* employees, 28 Empl.Prac.Dec. at 24,588, language in that opinion indicates that, for the purpose of administrative level attorneys' fees, private sector and federal employees are treated identically. *Id.*

**16.** This result follows necessarily from the express assimilation in *Kennedy* of private and federal sector employees' rights to administrative stage counsel fees; it follows by implication from the language of the *Swain* opinion and by that court's express reliance on *Kennedy. See also supra* note 15.

federal employees are deemed subject to a totally distinct ADEA enforcement regimen. The necessary corollary of embracing the reasoning adopted by the *Muth* court would, however, apparently be that *no* federal employee is *ever* entitled to an award of attorneys' fees under the ADEA, even where he prevails in exclusively *judicial* proceedings. In sum, each approach denies by implication an award to a group of ADEA prevailing parties not before the court—either to *private* sector complainants who prevail at the administrative level (*Kennedy, Swain*), or to federal employees who prevail in *judicial* proceedings (*Muth*).

## II.

### A. The Parties' Positions

In light of the detailed recitation of background information above, the parties' respective positions on appeal may be briefly stated. Appellant Kennedy's principal contention is that, because ADEA section 15 is "patterned after" comparable Title VII enforcement provisions, the ADEA section is properly read as incorporating the Title VII remedial scheme. Brief for Appellant at 5, 11 (quoting *Nakshian,* 453 U.S. at 163, 101 S.Ct. at 2703). Accordingly, appellant argues, because the broad "such ... relief as will effectuate the [purposes]"[17] language has been construed to authorize an award of fees for administrative legal work done for federal employees in the Title VII context, *see Parker v. Califano,* 561 F.2d at 320, 333 (D.C.Cir.1977); *Smith v. Califano,* 446 F.Supp. 530, 534 (D.D.C.1978), the similar ADEA language should be read to authorize comparable awards. In support of this position, appellant relies on the observations made by the Supreme Court in *Nakshian* to the effect that Congress patterned the federal employee provisions in

the ADEA after similar Title VII provisions, *see* 453 U.S. at 163–64, 101 S.Ct. at 2703, and on statements in the legislative history suggesting that the ADEA was intended to provide "substantially similar" protections and remedial measures to federal employees as those available under Title VII.[18]

Appellant discounts the purported distinctions between the ADEA enforcement scheme and the mechanism that obtains under Title VII. Although acknowledging the obvious differences noted by the district judge, appellant contends that administrative procedures play vital roles under both the ADEA and Title VII. The absence in the ADEA's attorneys' fee provision of the "action *or proceeding*"[19] language, appellant submits, does not evince a congressional intent to authorize fee awards only in cases of actual litigation. Rather, appellant contends, at the time the FLSA was passed, no administrative enforcement procedures existed, and, thus, no fee authorization for such proceedings was required to "make whole" a claimant. Brief for Appellant at 11–12. Appellant concludes that the subsequent development of an administrative reconciliation process necessarily implied the authorization for an award of attorneys' fees.

Finally, appellant cites considerations of public policy in support of her position. The concerns that support a fee award to prevailing race and sex discrimination complaints are equally germane, appellant submits, in the age discrimination context. Similarly, she argues, the congressional policies of "making whole" victims of discrimination and of encouraging the private vindication of civil rights augur in favor of an award of counsel fees to federal employees who secure age discrimination relief at the administrative level. In appellant's view,

---

17. The relevant language in the Title VII federal employee context is, in fact, such relief "as will effectuate the policies" of the statute. 42 U.S.C. § 2000e 16(b) (1976). We assume that no substantive difference was intended in the substitution in the ADEA of the word "purposes" for Title VII's "policies."

18. The principal sponsor of section 15 of the ADEA, Senator Bentsen of Texas, observed that "[t]he measures used to protect Federal employees [from age discrimination] would be substantially similar" to those contained in the federal employee provisions of Title VII. 118 Cong.Rec. 24,397 (1972).

19. *See* text accompanying note 12 *supra.*

the failure to permit such awards would, moreover, potentially create the anomaly that one who prevailed administratively would secure no fee award, while one who either lost at the administrative level or even bypassed it [20] but prevailed later in litigation *would* be reimbursed for the services of counsel. In effect, appellant contends, the approach adopted by the district court penalizes the age discrimination complainant who prevails at the administrative level and results in convolution of the enforcement scheme by discouraging dispute resolution prior to actual litigation.

The government appellee contends initially that the district court lacked jurisdiction over appellant's prayer for fees because appellant allegedly filed her complaint at the administrative level in an untimely fashion and because she failed to exhaust administrative remedies. Brief for Appellee at 7 n.6. On the attorneys' fees issue itself, appellee, adopting the position later embraced by the *Muth* court, argues initially that the Congress established a distinct enforcement scheme for federal employees, one that does not authorize an award of attorneys' fees under *any* conditions.

Appellee relies heavily on *Nakshian* in support of his position. The Court in that case made clear, appellee submits, that ADEA section 15 is separate and "complete in itself," *Nakshian,* 453 U.S. at 168, 101 S.Ct. at 2705 (quoting H.R.Rep.No.527, 95th Cong., 1st Sess. 11 (1977)), and is "unaffected by other sections" of the ADEA. *Nakshian,* 453 U.S. at 168, 101 S.Ct. at 2705. Appellee concedes that section 15 is patterned after Title VII's comparable federal employee provisions but argues that the failure of Congress to incorporate a sepa-

rate attorneys' fees provision into ADEA section 15—as that body unquestionably so incorporated into the comparable Title VII scheme [21]—deals a fatal blow to appellant's position. Moreover, appellee contends that the broad language of section 15 authorizing such "relief as will effectuate the purposes" of the ADEA cannot be given unlimited scope; appellee notes that the *Nakshian* Court, for example, clearly indicated that the language does not give courts *carte blanche* to structure either the process or the provision of relief. Appellee thus concludes that the general language of section 15 is insufficient to authorize an award of attorneys' fees for work performed at *either* the administrative or the judicial level. Accordingly, appellee argues that the district judge was correct in denying Mrs. Kennedy a fee award, although he of course demurs to the reasoning employed.

In the alternative, appellee contends that the language and structure of the general ADEA remedial scheme suggest that, while an award of counsel fees for work performed on behalf of federal claimants at the *judicial* level may be available, no such award is contemplated for legal services rendered at the *administrative* stage. Although conceding the similarities between the federal employee provisions of Title VII and those of the ADEA, appellee submits that the ADEA's attorneys' fee provision is considerably narrower in scope than that of Title VII: whereas Title VII authorizes an award of counsel fees to any federal employee who succeeds in an "action *or proceeding,*" 42 U.S.C. § 2000e-5(k) (1976) (emphasis added), the ADEA permits comparable awards only in connection with an

---

**20.** All parties agree that under the ADEA enforcement scheme applicable to federal employees the complainant may simply supply the requisite thirty days' notice and proceed directly thereafter in federal court; no invocation of administrative remedies is required. 29 U.S.C. § 633a(d) (1976).

**21.** The federal employee provisions of Title VII include § 717(d), 42 U.S.C. § 2000e-16(d) (1976), which specifically incorporates several of the private employee provisions of the statute. Included in this incorporation is § 706(k),

42 U.S.C. § 2000e-5(k) (1976), which specifically provides for the award of attorneys' fees to a prevailing party. Thus, as this court noted in *Parker v. Califano,* 561 F.2d 320, 323 (D.C. Cir.1977), "[t]he effect of Section 717(d) coupled with Section 706(k) is, therefore, to allow a federal court, in its discretion, to award reasonable attorneys' fees to a federal employee or applicant who is the prevailing party in any 'action or proceeding' under Title VII." *No* such incorporation exists, it is worth noting, with regard to the ADEA.

"action." Appellee argues that this linguistic distinction, when combined with the differing roles played by administrative proceedings under Title VII and the ADEA, suggests the absence of the congressional authorization required by *Alyeska* to ground an exception to the American Rule proscribing fee-shifting.

### III.

#### A. *Jurisdiction*

As a preliminary matter, we must rule on the government appellee's claim that the district court lacked jurisdiction to hear appellant's prayer for attorneys' fees. Appellee argues that, because Mrs. Kennedy's discrimination complaints were allegedly filed in an untimely fashion with the relevant administrative agencies and because she failed to pursue to fruition her claims in those agencies, the district court was precluded as a matter of jurisdiction from hearing the instant case. With regard to the allegation of untimely filing, appellant responds that the timeliness requirement is not jurisdictional but rather is akin to a statute of limitations; accordingly, appellant argues, charges of untimeliness, however valid, are subject to waiver and estoppel and were here waived by appellee's failure to press the arguments in the district court. Similarly, appellant contends both that the ADEA exhaustion requirement is not a jurisdictional matter and that, at any event, she in fact met the requirement.

■ We agree with appellant's position on both the timeliness and the exhaustion issues. To be sure, the requirements that a federal age discrimination complainant file a notice of complaint and exhaust available administrative remedies may be prerequisites for the institution of a lawsuit in federal court based on the discrimination allegation. *See, e.g., Milton v. Weinberger,* 645 F.2d 1070, 1074–77 (D.C.Cir.1981); *Siegel v. Kreps,* 654 F.2d 773, 783 (D.C.Cir.1981) (Robinson, J., concurring in part and dis-

senting in part). We are convinced, however, that the timeliness and exhaustion requirements are *not* jurisdictional in nature but rather are statutory conditions precedent to the instigation of litigation and are therefore subject to waiver, estoppel, and equitable tolling. The failure to raise these issues in the district court thus precludes reliance on them here.

■ As for the timeliness dispute, our ruling that the ADEA's timing requirements are not jurisdictional prerequisites is fortified by the Supreme Court's recent decision in *Zipes v. Trans World Airlines,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 1127 (1982). In *Zipes* the Court held that the timely filing with the EEOC of a charge of discrimination in violation of Title VII is not "jurisdictional" in nature but rather is a mere statutory precondition subject to equitable defenses. *Accord Bethel v. Jefferson,* 589 F.2d 631, 641 n.64 (D.C.Cir.1978). The analogy to the ADEA is strong in this regard, and we think it clear that Congress did not intend the statutory deadlines it inserted in the ADEA to be jurisdictional in character. Thus, we need not determine whether, in fact, appellant failed to comply with administrative regulations regarding timeliness or, indeed, whether those regulations bind appellant at all. Appellee's failure to raise the issue in the district court precludes its consideration here.

■ With regard to the claim that appellant's prayer for fees should be dismissed for her failure to exhaust administrative remedies, it would again appear that this requirement is not jurisdictional in character for the reasons stated above. *See Bethel,* 589 F.2d at 640–46. At any event, appellant satisfied the only exhaustion requirement mandated by section 15 of the ADEA, that of either providing the EEOC with notice of an intent to sue within 180 days of the unlawful practice, or actually filing a discrimination complaint with the EEOC.[22] *See* 29 U.S.C. § 633a(d) (1976); *Siegel v. Kreps,* 654 F.2d at 778 n.16.

**22.** Following the latter course, Mrs. Kennedy filed such a complaint on September 10, 1979, and secured all relief she requested, save for

attorneys' fees. That she also had pending a complaint with the District of Columbia's Of-

Accordingly, appellant's demand for attorneys' fees was properly before the district court.

## B. Analysis

▮ As noted above, the district judge properly treated appellant, a competitive service employee of the District of Columbia, as subject to the ADEA's federal employee provisions. *Kennedy,* 509 F.Supp. at 228.[23] We cannot agree, however, with the district judge's critical assumption that federal employees in actions brought under ADEA section 15 enjoy the same right to an award of counsel fees as do private sector employees under section 7. Although construction of the respective sections could, in fact, lead to that result, the district court's inextricable correlation of federal and private employee remedies cannot stand in light of the Supreme Court's subsequent decision in *Nakshian.* As discussed earlier, the Court in that case concluded that the ADEA enforcement schemes for public and private sector employees *differ* in fundamental respects and that divergent rights and remedies may obtain under the schemes. Thus, we conclude that the remedial structure of section 15 is, as the Supreme Court noted, "self-contained and unaffected by other sections [of the ADEA], including those governing procedures applicable in actions against private employers." *Nakshian,* 453 U.S. at 168, 101 S.Ct. at 2705.

This conclusion has a significant bearing on the analytical model that we apply to the resolution of the issue *sub judice,* for it means—precisely as the district court feared—that the question must be resolved by reference to the language of section 15 alone. *See Kennedy,* 509 F.Supp. at 228. Thus, the issue we face, simply stated, is whether language empowering a court to grant such legal or equitable relief "as will effectuate the purposes" of the ADEA provides a sufficient basis for an award of attorneys' fees for administrative legal services. *See* ADEA § 15(c), 29 U.S.C. § 633a(c) (1976).

Although the sole source of authorization for the fees requested by appellant is thus the language of section 15(c) of the ADEA, it is not the case that our focus must be solely on that subsection; indeed, the very language of section 15(c) mandating such relief as is necessary to implement the purposes of the ADEA suggests that the determination of appropriate remedies must be informed by the ADEA as a whole. Recognizing this interplay, appellant argues that a fee award in cases such as the instant one would facilitate the vindication of civil rights and stresses that the same language as that appearing in ADEA section 15(c) has been held to authorize administrative fee awards under Title VII. *See Smith,* 446 F.Supp. at 534.

It is true, as appellant notes, that an award of fees for administrative legal services might contribute to the resolution of age discrimination complaints through agency processes and that this enhancement of the role of administrative proceedings might obviate frequent recourse to federal courts for relief. It is also true that a statutory provision need not contain the words "attorneys' fees" to permit such awards; rather, it is sufficient if the Congress has "clearly indicated" that the provision should so be construed. *Fitzgerald v. United States Civil Service Comm'n,* 554 F.2d 1186, 1189 & n.8 (D.C.Cir.1977). We thus agree with appellant that clear evidence of congressional intent to award counsel fees may suffice, in the absence of an explicit authorization, to ground an exception to *Alyeska* and that the omission of the magic words "attorneys' fees" is not

---

fice of Human Rights does not, it is clear, affect her rights to sue under the ADEA.

23. Section 15(a) of the ADEA is applicable, *inter alia,* to personnel actions in "those units of the government of the District of Columbia having positions in the competitive service

....'" 29 U.S.C. § 633a(a) (Supp. IV 1980). Mrs. Kennedy was, of course, employed in the competitive service of the District of Columbia at the time of the alleged employment discrimination.

necessarily fatal to a prayer for such an award.[24]

We are, however, mindful of the *Alyeska* Court's admonition that a specific, if not explicit, authorization is required to overcome the presumption against fee-shifting. In light of this admonition, the general language employed in section 15(c), and, quite significantly, the more limited role played by administrative proceedings under the ADEA, we have reached the conclusion that no award of fees may be made in the present case. The structure of the ADEA, the wording of section 15(c), and the logic of prior judicial decisions all lead to this result.

Although the language of section 15(c) may be "sweeping" and "exceptionally expansive," *Bertrand v. Orkin Exterminating Co.,* 432 F.Supp. 952, 953, 956 (N.D.Ill.1977) (construing identical language in section 7(b) of the ADEA, 29 U.S.C. § 626(b) (1976)), it is also exceedingly vague. We are accordingly hesitant to hold that such broad language constitutes the specific statutory exception to the American Rule demanded by *Alyeska,* at least in the absence of compelling support in other statutory language or in the legislative history.

Appellant places in this regard considerable reliance on a district court decision, *DeFries v. Haarhues,* 488 F.Supp. 1037 (C.D.Ill.1980). In *DeFries* the court held that a federal employee was entitled to an award of counsel fees for services performed in connection with ADEA *litigation;* although the court did *not* hold that the attorneys' fees provision of ADEA section 7 inured to the benefit of federal employees, it did rule that an award for services per-

formed at the judicial level was authorized by section 15 because the award "effectuate[d] the purposes" of the ADEA. *Id.* at 1045.

We agree with the basic approach of the *DeFries* court; when the statutory language invites a consideration of "the purposes" of a piece of legislation to determine relief, scrutiny must be accorded the overall goals and structure of the statute. We need express no opinion, however, on the correctness of the result in *DeFries,* for judicial actions clearly play a role distinct from administrative proceedings in the ADEA enforcement scheme. We cannot agree with appellant that *DeFries* compels or even strongly suggests a finding that an award of fees for *administrative* legal services "effectuates the purposes" of the ADEA.

Upon close study of the ADEA remedial scheme, we are convinced that any mild "effectuation" of the purposes of the Act flowing from an award of counsel fees to one in appellant's position is insufficient to overcome the hurdle posed by *Alyeska.* Notwithstanding appellant's repeated invocation of Title VII and the similarity of the federal employee provisions of the ADEA to it, it remains the case that administrative proceedings are not intended to serve the same purposes under the two statutes. Under Title VII, the federal complainant *must* initially seek relief in the agency that has allegedly discriminated against him; if the complainant is dissatisfied with the agency's final decision, he may in turn either appeal to another agency or, if he prefers, file suit directly in federal court after the

---

**24.** There have been post-*Alyeska* cases in which a fee award has been made in the absence of express authorization. *See, e.g., Smith v. Califano,* 446 F.Supp. at 533 (D.D.C. 1978) ("Although the Congressional intent to include attorneys' fees must be clear, it may be expressed in terms other than the use of those specific words."). On the other hand, most of the cases cited in support of this proposition by appellant either embrace the point only in dicta, or, indeed, refuse to permit a fee award on such a basis. *See Director, Office of Workers' Comp. Programs v. South East Coal Co.,* 598 F.2d 1046 (6th Cir. 1979) (specific authorization

involved by virtue of incorporation); *National Ass'n of Letter Carriers v. United States Postal Service,* 590 F.2d 1171 (D.C.Cir.1978) (award denied); *Republic Steel Corp. v. U. S. Dep't of Labor,* 590 F.2d 77 (3d Cir. 1978) (specific authorization involved by virtue of incorporation); *Fitzgerald v. United States Civil Service Comm'n,* 554 F.2d 1186 (D.C.Cir.1977) (award denied). *See generally* Reply Brief for Appellant at 2-3. Thus, the mandate of *Alyeska* would appear to demand quite clear—indeed, virtually incontrovertible—evidence of congressional intent to ground a fee award by implication.

expiration of thirty days from the date of the final ruling. At any event, the complainant under Title VII may file a federal court action once 180 days have elapsed from the date of the filing of the initial charge or the filing of the appeal, if the initial agency or the appellate body has not taken final action. *See* 42 U.S.C. §§ 2000e–16(c) and (d) (1976), *incorporating* 42 U.S.C. §§ 2000e–5(f) through (k) (1976); *Parker,* 561 F.2d at 323. As the Supreme Court noted in *Brown v. General Services Administration,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976), the federal employee provisions of Title VII "establish complementary ... enforcement mechanisms" providing for a "careful blend of administrative and judicial enforcement powers." *Id.* at 831, 833, 96 S.Ct. at 1968. The "bottom line" in this regard is clear: Congress mandated that Title VII complainants exhaust certain administrative remedies as a precondition to filing an action in federal court.

By contrast, under the ADEA "pursuit of a remedy through [administrative] channels is optional and not a mandatory prerequisite to the filing of a civil action." *Kennedy,* 509 F.Supp. at 230. Neither the private nor the federal employee sections of the ADEA requires anything more by way of "exhaustion" than the provision of notice to the appropriate federal official of the intention to sue. *Id.* Although Congress established a supplementary administrative procedure to assist in the enforcement of the ADEA, it remains the case that resort to that procedure is optional and that, in contrast to the usual course under Title VII, no quasi-adversarial proceedings of any sort are required. *See Parker,* 561 F.2d at 331–33; *see also New York Gaslight Club v. Carey,* 447 U.S. 54, 69–70, 100 S.Ct. 2024, 2033–34, 64 L.Ed.2d 723 (1980). Accordingly, it is beyond cavil that the administrative proceedings *required* under the ADEA are *not* of the same ilk as those under Title VII that prompted us in *Parker* to observe that "[a]ny realistic assessment of Title VII administrative proceedings requires the conclusion that—despite the fact they are not strictly adversarial—an employee would of-

ten be ill-advised to embark thereon without legal assistance." 561 F.2d at 332. As the district judge noted in the case at bar, these concerns of fair play and equity are not apposite "where the first adversarial step in which a party is required to present his case is the filing of a complaint." *Kennedy,* 509 F.Supp. at 231. The notice requirement could easily be fulfilled by the layman or inexpensively performed by counsel. *Id.*

Thus, we agree with the district judge that administrative proceedings under the ADEA are not a "pervasive and integral part of the overall scheme of enforcement." *Id.; accord Swain v. Secretary,* 28 Empl. Prac.Dec. (CCH) ¶ 32,574, at 24,585 (D.D.C. Jan. 19, 1982). It is thus difficult to determine how an award of counsel fees for services performed in such optional proceedings could "effectuate the purposes" of the ADEA in any significant way. This conclusion is, moreover, reinforced when we examine the language of the attorneys' fee provision under the private enforcement section of the ADEA. As noted above, that provision calls for the award of fees to any "plaintiff" who secures a "judgment" in an "action" brought under the Act; as the district judge noted, the litigative orientation of these terms is manifest. In both the *New York Gaslight Club* and *Parker* decisions, the respective tribunals in awarding administrative legal fees under Title VII emphasized the use of the disjunctive phrase "action or proceeding" as evidence of congressional intent to authorize such awards. By necessary implication, the absence of such language in the ADEA counsels against an award of fees in the instant case.

In response to this position, appellant contends that when initially enacted in 1967 no significant administrative procedures existed for which reimbursement for the work of counsel might be required. Brief for Appellant at 12. Thus, appellant contends, when Congress amended the ADEA in 1974 to cover federal employees, it must have intended to provide those employees with attorneys' fees for administrative legal

services for the administrative processes that were added in that year. Whatever the merits of this argument might be as a matter of theory, there is not a whit of evidence in the legislative history to support it; general remarks regarding the breadth of relief intended under section 15 cannot substitute for the sort of concrete indicia of congressional intent to award counsel fees needed to permit an exception to *Alyeska*. Moreover, in this spirit of reasoning by implication, we would note that Congress amended the ADEA in 1978 to provide, *inter alia,* that section 15 was not affected by any other substantive provision of the Act. *See* 29 U.S.C. § 633a(f) (Supp. IV 1980). Thus, in amending the section as it did, Congress could quite easily have amended it further to provide explicitly for an award of attorneys' fees under the circumstances at issue in the case at bar. *Cf. Nakshian,* 453 U.S. at 167, 101 S.Ct. at 2705 (Congress failed to amend ADEA to provide right to jury trial for federal ADEA complainants). Moreover, though the point that "Congress knew how to do it if it had wished" is easily made and rarely refuted regardless of its probity, we would note that, in spite of the obvious model supplied by the incorporation subsection of Title VII, Congress did not incorporate even the more limited FLSA attorneys' fee provision into the section 15 enforcement scheme. Though we fully recognize that the failure of Congress to act in a particular way is often of limited evidentiary value, such a failure is, in our opinion, no less probative of congressional intent than is the "silent adoption" approach urged by appellant.

In sum, the conjunction of the vague authorizing language of section 15(c), the more circumscribed role of administrative proceedings under the ADEA enforcement scheme, and the omission of the word "proceeding" from the attorneys' fee provision in the private employee section of the statute combine to convince us that Congress did not intend to award counsel fees to an ADEA claimant in appellant's position. We do not view this result as in any fashion inconsistent with *Smith v. Califano,* in which language identical to that of ADEA

section 15(c) was held to authorize an award of attorneys' fees for administrative legal work. That case involved federal employee rights under Title VII, and, as we have stressed above, administrative proceedings are clearly intended under that statute to play a central role in dispute resolution. Thus, although we express no opinion on the correctness of the *Smith* result, it is manifest that the two contexts are distinguishable notwithstanding the similarity of the statutory language. Moreover, we might note *en passant* that the *same* district judge who wrote the *Smith* decision issued the opinion under challenge in the instant case; apparently the differences in structure between the two statutes were sufficient to persuade him that the question of fee authorization under each was a distinct matter, and with that we agree.

Finally, we address briefly the arguments of policy proffered by appellant in support of her position. On what might be called the positive side of the ledger, appellant contends that the provision of attorneys' fees for administrative proceedings under the ADEA will enhance the utility of those proceedings as a mode of dispute resolution, thus aiding all concerned and leading to the "conservation of judicial time." *Parker,* 561 F.2d at 333. While this may well be true, it is not our province to rewrite the scheme of remedies adopted by the Congress in enacting the ADEA to establish a more perfect system to combat age discrimination. On the negative side, appellant argues that a denial of counsel fees will encourage victims of discrimination to initiate court actions "prematurely" and will discourage them from pursuing diligently administrative processes to fruition; appellant accordingly contends that the failure to award fees will relegate the administrative process to a *"pro forma* exhaustion step." Brief for Appellant at 23 (quoting *Smith,* 446 F.Supp. at 534). The simple answer to this point is that Congress apparently anticipated, and indeed *authorized,* this rush to the courthouse, and, again, it is not our province to rewrite the legislation in a more "rational" manner. Even if, moreover, the

failure to authorize an award of fees to one in appellant's position was a product of congressional oversight or inadvertence, we can only endorse the position of the district judge on this score—any such cries of oversight or omission are properly addressed to the Congress and not to the courts. *See Kennedy,* 509 F.Supp. at 231 & n.11.

## IV.

Given the confusing and arguably conflicting decisions in the area of the authority of federal courts to award federal employees fees for legal services performed under civil rights legislation at the administrative level, it is useful for us to summarize what our holding today does *not* involve. We do not hold that federal ADEA claimants have no entitlement to a fee award for the services of counsel rendered in connection with *judicial* actions. We thus do not by our holding in the case at bar express any view on the argument of appellee, apparently embraced by the court in *Muth v. Marsh,* that section 15 provides an insufficient authorization for *any* award of counsel fees irrespective of the nature of the action.[25]

Secondly, we do not today express a view on the availability of fee awards to *private sector employees* for legal services performed under the ADEA at the administrative level. Since the district judge in the instant case assumed that private sector and federal employees enjoy the same right to administrative level fee awards, his decision involved as a necessary concomitant a ruling that private sector employees have no such fee right as well. As discussed above, we have not made the same assumption of identity of rights, and thus we express no conclusion on the availability of administrative counsel awards to private sector employees proceeding under section 7 of the ADEA.

Our holding today is only that an award of attorneys' fees and costs may not be made under section 15 of the ADEA to a federal employee who secures relief solely through administrative processes. Because the district judge reached the same conclusion, his decision is

*Affirmed.*

---

**25.** Indeed, in light of the centrality of *judicial* actions to the remedial scheme of the ADEA, one could at least argue that attorneys' fees for work performed in connection with court ac-

tions *are necessary to effectuate the remedial* purposes of the Act. *See, e.g., DeFries v. Haarhues,* 488 F.Supp. 1037, 1045 (C.D.Ill.1980).